STEWART ET AL. *v.* MADDOX.

FALSE IMPRISONMENT.—*Action on the Case.—Trespass.—Evidence.*—In an action for damages for false imprisonment, wherein the complaint alleged, that the defendants, while unlawfully holding the plaintiff in custody, had compelled him, by menaces, force and as the price of his liberty, to execute and deliver to one of the defendants a promissory note for a certain sum, the defendants offered to prove that the payee had directed a co-

defendant to visit the plaintiff, to procure him to execute such promissory note, pursuant to a contract which, the payee stated to such co-defendant, existed between the payee and plaintiff.

*Held,* that the evidence was properly excluded.

SAME.—*Measure of Damages.*—*Exemplary Damages.*—Where, in such action, the facts alleged or proved against the defendants amount to a criminal offence, exemplary damages can not be assessed.

SAME.—*Compensatory Damages.*—In assessing the damages to be recovered by the plaintiff in such an action, the jury trying the case are not restricted to the mere naked amount of pecuniary loss suffered by the plaintiff; but they may also take into consideration any indirect pecuniary injury which is a necessary consequence of the defendant's direct act, if warranted by the averments of the complaint, such as loss of time, delay in business and expenses incurred ; also the plaintiff's physical suffering, such as bodily pain, permanent disability and disfiguration; also the plaintiff's mental suffering, such as anguish of mind, sense of shame or humiliation and loss of honor ; and also injury to the plaintiff's business, profession, reputation, or social position ;—all of which are compensatory, and not exemplary.

From the Shelby Circuit Court.

*B. F. Love* and *W. Z. Conner*, for appellants.

*T. B. Adams* and *L. T. Michener*, for appellee.

BIDDLE, J.—Complaint by John A. Maddox against James Y. Stewart, Samuel Stewart, and John A. Wright, averring the following facts :

That, " on the 16th day of December, 1874, at the city of Shelbyville, county of Shelby, and State of Indiana, the said defendants did then and there unlawfully, forcibly and maliciously, with force of arms, make an assault upon the person of the plaintiff, and then and there, by menaces of violence to his person, and threats . that they, the said defendants, would take plaintiff's life, did then and there unlawfully, forcibly, and maliciously, by the means aforesaid, restrain the plaintiff of his liberty, and imprison and hold him in custody against his will, for a great length of time, to wit, for the space of three hours, without any legal authority so to do, and did then and there, by the use of said violence, and the restraint of plaintiff's liberty, as aforesaid, compel the plaintiff to deliver to one of the

defendants, to wit, James Y. Stewart, a promissory note, payable by plaintiff to said defendant Stewart, for a great sum, to wit, the sum of two hundred and fifty dollars; that, by reason of said assault, menaces and threats, and unlawful and forcible imprisonment, the plaintiff was not only deprived of his liberty, but was compelled to and did undergo great mental suffering, anguish and humiliation, and was detained and prevented from attending to his business for a great length of time, to wit, one day; by means of all which he was damaged in the sum of fifteen thousand dollars, for which sum he demands judgment and all other proper relief."

A second paragraph of complaint, omitting the formal introductory part, is as follows:

"That heretofore, to wit, on the 16th day of December, 1874, at the county of Shelby and State of Indiana, the said defendants did unlawfully conspire together, to forcibly, maliciously, and unlawfully imprison this plaintiff, and that said defendants then and there, in pursuance of said conspiracy, did unlawfully, maliciously and forcibly, with menaces and threats of bodily harm, and by an assault on plaintiff with dangerous and deadly weapons, imprison, detain and restrain him of his liberty, against his will, and without right or legal authority so to do, for a great length of time, to wit, for three hours; that said defendants then and there compelled this plaintiff, in order to secure his release, and discharge him from said forcible and unlawful imprisonment, to then and there execute and deliver to one of said defendants, to wit, James Y. Stewart, a certain promissory note, payable by said plaintiff to said Stewart, for a great sum of money, to wit, the sum of two hundred and fifty dollars; that, by reason of said forcible and unlawful imprisonment, and of the said menaces, threats, violence and assaults with dangerous and deadly weapons on the plaintiff, as aforesaid, he was not only deprived of

his liberty, but was compelled to and did undergo great mental suffering, anguish and humiliation, and was detained and prevented from attending to his business for a great length of time, to wit, for one day; by reason of all of which he was damaged in the sum of fifteen thousand dollars, for which sum he demands judgment and all other proper relief."

Various demurrers were filed to the complaint, rulings had upon them, and exceptions reserved; but, as they are not discussed in the appellants' brief, we do not state them.

Answer, general denial; trial by jury verdict and judgment for appellee.

By a motion for a new trial, several questions are presented in the record; such as have been discussed by the parties in their briefs will be decided.

At the trial, the appellants offered to prove by the defendant John A. Wright certain directions given to him by his co-defendant James Y. Stewart, in reference to hunting the plaintiff Maddox, in Rush county, and procuring the execution of the two-hundred-and-fifty-dollar note; that, after the note was filled up, he took it, under the directions of Stewart, and made search for Maddox, as Stewart's agent, with a view of procuring Maddox to execute the note; and the directions of Stewart to Wright, and what Stewart said concerning an agreement existing between Stewart and Maddox, in reference to the execution of the two-hundred-and-fifty-dollar note by Maddox to Stewart, before the meeting of the plaintiff and defendants at the telegraph office in Shelbyville, on the 16th day of December, 1874, the time and place at which the wrong complained of is alleged to have been committed; all of which, upon objection made by the appellee, the court refused to admit.

There is no error in these rulings. We can not see how

the directions of one defendant to a co-defendant in an action of tort charged against both, or how any agreement, understanding or relation between co-defendants in such a case, could be given in evidence in their favor, or in favor of either of them; or how any such directions, agreement or relation could possibly bind the plaintiff in the action.

The appellants offered, at the trial, " to give in evidence a five-hundred-dollar note, executed by Stewart to Anderson." It was properly rejected. The note had no connection with the case. Whatever its relation might have been to the appellants, it could in no manner affect the appellee.

The court, of its own motion, at the trial, instructed the jury as follows:

" If you find for the plaintiff, and if you believe, from the evidence in this case, that the defendants were guilty of gross and wanton oppression of plaintiff, then, in the assessment of his damages, you are not limited to the amount of his actual pecuniary loss, but you may add, by way of punishment, or punitive damages, such an amount as will be likely to prevent the repetition of such acts."

In considering the propriety of giving this instruction to the jury, we must first settle the question whether the facts charged in the complaint constitute a criminal offence, for which the appellants might be punished, or not; and whether there was any evidence before the jury fairly tending to prove a criminal offence, as alleged in the complaint, to which the instruction was applicable; for, if the facts averred in the complaint amount to a criminal offence, for which the appellants might be punished, it is very clear, according to the decisions of this court, that the jury could not assess exemplary damages in favor of the appellee.

We do not think that the facts averred in either paragraph of the complaint amount to an assault and battery,

or to an assault, as defined by our statute; but it appears to us that the facts alleged in the second paragraph substantially charge the misdemeanor known in our law as a rout, which is defined as follows:

"If three or more persons shall meet together to do an unlawful act upon a common cause, and shall make advances toward the commission thereof, they shall be deemed guilty of a rout, and, upon conviction, shall be fined not exceeding one hundred dollars, or may be imprisoned in the county jail not exceeding sixty days." 2 R. S. 1876, p. 458, sec. 5.

In the second paragraph of the complaint, it is charged that the appellants, three persons, met together, to do an act which, as charged, is unlawful, in pursuance of a conspiracy, which is equivalent to a common cause, and that they made advances toward the commission thereof. This analysis shows all the elements which are necessary to constitute a rout, as defined by the statute; and the evidence, which is before us, tends fairly toward proving all the ingredients of the offence. We think, therefore, that the court erred in giving the seventh instruction to the jury. *Taber* v. *Hutson*, 5 Ind. 322; *Butler* v. *Mercer*, 14 Ind. 479; *Nossaman* v. *Rickert*, 18 Ind. 350; *Humphries* v. *Johnson*, 20 Ind. 190.

Being satisfied that the facts charged in the second paragraph of the complaint amount to a misdemeanor, defined as a rout, we do not enquire whether the facts charged in either paragraph would amount to the felony known as blackmailing, as defined in section 1 of the act of March 10th, 1873, 2 R. S. 1876, p. 449, or not, as such enquiry is not necessary to the decision of the case.

The question of exemplary damages is not settled beyond dispute, even in England. In America, the rule in the several States is not uniform, and amongst text-writers the same difficulty exists. The subject, between Greenleaf and

Sedgwick, is a standing controversy. Mayne adheres to the English rule, and is rather the advocate of punitive damages; while Field, in a late excellent work, doubts the wisdom of the rule. Indeed, the controversy is sometimes one of words, between exemplary damages, an example to warn, and punitive damages, inflicting punishment, both of which are often used as convertible terms, instead of a dispute about principles; and it is not surprising that the discussion continues.

The doctrine of exemplary or punitive damages rests upon a very uncertain and unstable basis. It is almost equivalent to giving the jury the power to make the law of damages in each case; and, in a case where the defendant is a commanding, popular, influential person, and the plaintiff of the opposite character, and the local and temporary excitement or prejudice of the time happens to be in favor of the defendant and against the plaintiff, the jury is apt to be reluctant in giving even pecuniary compensation, without adding anything by way of exemplary or punitive damages; while, in a case in which the characters of the parties and the circumstances are reversed, the jury will be likely to push their power to an unwarranted and unconscionable extent, dangerous to justice and the security of settled rights. Besides, a principle that allows an individual to put the money assessed against another individual, as punishment or a warning example, into his private pocket when he is not entitled to it, whatever public advantages it may have, does not seem to be thoroughly sound.

But, because the jury, in cases where the complaint alleges facts which constitute a criminal offence as well as a civil liability, can not give exemplary or punitive damages, it does not follow that they are restricted to mere naked amount of pecuniary loss. Besides damages for the direct pecuniary injury, as by taking away, destroying,

or injuring property, the jury may allow damages for indirect pecuniary injury, when it is the necessary consequence of the direct act, and when the averments in the complaint warrant it, as loss of time, delay in business, expenses incurred, etc.; and for injury to a business or profession, reputation or social position; and for physical suffering, as . bodily pain, permanent disability, disfiguration, etc.; and for mental trouble, as anguish of mind, sense of shame or humiliation, loss of honor, etc.;—all of which are considered compensatory, and not exemplary or punitive, damages. , *Anthony* v. *Gilbert,* 4 Blackf. 348; *Morford* v. *Woodworth,* 7 Ind. 83; *Millison* v. *Hoch,* 17 Ind. 227; *Cox* v. *Vanderkleed,* 21 Ind. 164; *Moore* v. *Crose,* 43 Ind. 30; *Ziegler* v *Powell,* 54 Ind. 173; *Koerner* v. *Oberly,* 56 Ind. 284.

Upon a full review of the authorities and the elementary . writers, we adhere, with increased confidence, to the rule heretofore adopted by this court, and so frequently approved.

The judgment is reversed, at the costs of the appellee, and the cause remanded, with instructions to sustain the motion for a new trial, and for further proceedings.

Petition for a rehearing overruled.