*J. T. YOUNG v. WESTERN UNION TELEGRAPH COMPANY.

*Telegraph Company—Parties—Damages—Injury to Feelings.*

Where a telegraph company received for transmission the following message—"Come in haste; your wife is at the point of death"—and failed to deliver the same for eight days, though the receiver's place of business was well known and within a short distance of the office of the company in the town in which the receiver resided, whereby he was prevented from being present at his wife's death or attending her funeral: *Held*, (1) there was gross negligence, and the receiver was entitled to maintain an action for the tort; (2) the plaintiff is entitled, in addition to the nominal damages, to recover compensation for the mental anguish inflicted on him by the negligence of the defendant.

This was a CIVIL ACTION, tried before *Boykin, J.,* at the Fall Term, 1889, of CRAVEN Superior Court, upon demurrer to the complaint.

The complaint alleges, in substance, that on 26th of February, 1889, the step-father of plaintiff's wife, at Greenville, S. C, at whose house the wife was on a visit, delivered to the defendant telegraph company the following telegram, paying the sum charged for its transmission:

"GREENVILLE, S. C., Feb. 26th, 1889.

To J. T. YOUNG, New Berne, N. C.
Come in haste. Your wife is at the point of death.
(Signed)     J. W. RICE."

That the telegram was received by the agent of defendant at New Berne on the 27th of February, and, with ordinary care and attention, could have been delivered to plaintiff within a few minutes after its receipt, as the plaintiff's resi-

---

* Head-notes by CLARK, J.

dence and place of business were well known, the latter
being on a principal street, within 400 yards of the telegraph
office, and plaintiff had been a resident many years continu-
ously in New Berne, engaged in business there; that by the
gross negligence of defendant, the plaintiff had no notice of
such telegram until the receipt of a letter from the sender,
on March 5th, whereupon, he went to defendant's office, on
March 6th, and demanded the telegram, which was then
delivered to him; that the plaintiff was continuously in
New Berne, at his usual place of business from February
26th till March 6th, 1889; that had the telegram been deliv-
ered with reasonable promptness, he could have had the
consolation of being with his wife in her last moments and
of attending her funeral, but by reason of aforesaid gross
negligence on the part of the defendant, the death and
burial of his wife took place without any knowledge thereof
on the part of the plaintiff; that the plaintiff has suffered
great pain, mental anguish and distress by reason of the
gross negligence and delay in transmitting and delivering
the telegram, and demands damages. The defendant
demurred to the complaint, on the ground that "It does not
state facts sufficient to constitute a cause of action, in that
the only damage which it is alleged that plaintiff has sus-
tained is mental anguish and grief by reason of the plain-
tiff's not being able, on account of defendant's failure to
deliver the message, to be present with his wife during her
illness and attend her funeral."

The demurrer was overruled, and defendant appealed.

*Messrs. C. Manly* and *F. M. Simmons (Mr. O. H. Guion* filed
a brief) for plaintiff.
*Mr. W. W. Clark,* for defendant.

CLARK, J.—after stating the facts: In addition to the
ground of demurrer set out in the record, the defendant

demurred *ore tenus* in this Court, that the complaint did not state a sufficient cause of action, in that the plaintiff was not a party to the contract, and, therefore, could not maintain an action for its breach.

Upon the question whether the receiver can maintain the action, Shearman & Redfield on Negligence, § 560, says: " We think, therefore, upon the principle of these decisions, a telegraph company is responsible for its negligence to a person to whom a message is addressed, as well as to the sender. If it were not so, it is obvious that the receivers of telegrams would often receive great damage without any means of redress."     There is ample authority to the same effect. *Wadsworth* v. *Western Union Telegraph Co*, 86 Tenn., 695; *Elwood* v. *Telegraph Co.*, 45 N. Y., 549; *Ellis* v. *Telegraph Co*, 13 Allen, 227; *N. Y. P. Co.* v. *Dryburg,* 85 Pa. St., 298; *Aiken* v. *Telegraph Co.*, 19 Mo. App., 80, and many others.     This, while not the English rule, is stated by Gray on Telegraphs, § 65; 2 Thomp. Neg., 847; 5 Lawson's Rights and Rem., § 1972, and Wharton Neg., § 758, to be the invariable rule in this country.     The following may be summed up as the reasons assigned therefor: (1) that a telegraph company is a public agency, and responsible, as such, to anyone injured by its negligence, or, at least, it is the common agent of sender and receiver, and responsible to each for any injury sustained by them, respectively, by its negligence; (2) that in a case like this, the receiver is the beneficiary of the contract, and the injury, if any, caused by the company's negligence, must be to him; (3) the message is the property of the party addressed, in analogy to a consignee of goods; (4) that upon the face of the message, such as this, the sender is the agent of the receiver, and the latter, as the principal, can maintain an action for breach of the contract, or for a *tort*, if injury is done him by negligence in performance of the duty contracted for.  " The company's employment is of a public character, and it owes the duty of

care and good faith to both sender and receiver." 3 Sutherland Dam., 314. This author goes on to state that where there is gross or wilful negligence, the action can be brought either for *tort* or on contract, and, in case of misfeasance, the company is liable also to third parties as wrong-doers.

Upon authority and reason, we think it clear that the plaintiff could maintain the action, and whether it is an action *ex contractu* for breach of the contract of speedy and safe transmission, or *ex delicto* for negligence and violation of the duty which the defendant owed as a public corporation, or as common agent of sender and receiver, at least nominal damages could be recovered.

"The principle that for the violation of every legal right, nominal damages, at least, will be allowed, applies to all actions, whether for *tort* or breach of contract, and whether the right is personal or relates to property." 1 Sutherland Dam., 11. Where "there is a neglect of duty by a telegraph company, and an infraction of the plaintiff's right to have care and diligence used in the sending and delivery of his message, he is entitled to nominal damages, at least." *Ibid.*

The other question, and the one most earnestly pressed upon our consideration, is whether the plaintiff can recover for mental pain and anguish when there has been no physical injury.

In Shear. & Red. Neg., § 605, it is said: "In case of delay or total failure of delivery of messages relating to matters not connected with business, such as personal or domestic matters, we do not think that the company in fault ought to escape with mere nominal damages on account of the want of strict commercial value in such messages. Delay in the announcement of a death, an arrival, the straying or recovery of a child, and the like, may often be productive of an injury to the feelings which cannot easily be estimated in money, but for which a jury should be at liberty to award fair damages. Yet, in such cases, the damages ought not to

be enhanced by evidence of any circumstances which could not reasonably have been anticipated as probable from the language of the written message."

This paragraph was cited and approved by the Court of Appeals of Kentucky in an opinion filed in June of this year (*Chapman* v. *Western Union Telegraph Co.*, 13 S. W. Rep., 880), in which the Court says: "This seems to be the true rule—one which is in accord with reason, and necessary to a proper protection of individual right and the interests of the public."

In this case, the Court held that the plaintiff could recover damages for delay in the delivery of a message announcing the illness and death of the plaintiff's father, and says:

"Many of the text-writers say that a person cannot recover damages for mental anguish alone, and that he can recover such damages only where he is entitled to recover some damages upon some other ground. It will generally be found, however, that they are speaking of cases of personal injury. If a telegraph company undertakes to send a message, and it fails to use ordinary diligence in doing so, it is certainly liable for some damage. It has violated its contract, and, whenever a party does so, he is liable, at least to some extent. Every infraction of a legal right causes injury in contemplation of law. The party being entitled, in such a case, to recover something, why should not an injury to the feelings, which is often more injurious than a physical one, enter into the estimate? Why, being entitled to some damage by reason of the other party's wrongful act, should not the complaining party recover all the damage arising from it? It seems to us that no sound reason can be given to the contrary. The business of telegraphing, while yet in its infancy, is already of wonderful extent and importance to the public. It is growing, and the end cannot yet be seen. A telegraph company is a *quasi* public agent, and, as such, it should exercise the extraordinary privileges accorded

to it with diligence to the public. If, in matters of mere trade, it negligently fails to do its duty, it is responsible for all the natural and proximate damage, is it to be said or held that, as to matters of far greater interest to a person, it shall not be, because feelings or affections only are involved? If it negligently fails to deliver a message which closes a trade for $100, or even less, it is responsible for the damage. It is said, however, that if it is guilty of like fault as to a message to the husband that the wife is dying, or the father that his son is dead, and will be buried at a certain time, there is no responsibility save that which is nominal. Such rule, at first blush, merits disapproval. It would sanction the company in wrong-doing. It would hold it responsible in matters of the least importance, and suffer it to violate its contracts with impunity as to the greater. It seems to us that both reason and public policy require that it should answer for all injury resulting from its negligence, whether it be to the feelings or the purse, subject only to the rule that it must be the direct and proximate consequence of the act.

"The injury to the feelings should be regarded as a part of the actual damage, and the jury be allowed to consider it. If it be said that it does not admit of accurate pecuniary measurement, equally so may it be said of any case where mental anguish enters into the estimate of injury for a wrong, and it furnishes no sufficient reason why an injured party should not be allowed to look to the wrong-doer for reparation. If injury to the feelings be an element to the actual damages in slander, libel and breach of promise cases, it seems to us it should equally be so considered in cases of this character. If not, then most grievous wrongs may often be inflicted with impunity; legal insult added to outrage by the party by offering one cent, or the cost of the telegram, as compensation to the injured party. Whether the injury be to the feelings or pecuniary, the act of the violator of a

right secured by contract has caused it. The source is the same, and the violator should answer for all the proximate damages."

In Indiana and Texas, opinions to the same effect have also been filed during the present year. (In the Indiana case, *Reese v. W. U. Tel. Co.*, in the Supreme Court of that State (March, 1890), 123 Ind., 294, BERKSHIRE, J., says: "Although the telegram had no relation to any business transaction which would have involved dollars and cents merely, this did not justify the appellee in neglecting its duty. It had undertaken, for a valuable consideration, to deliver the message promptly, and its failure so to do, or to make reasonable effort in that direction, was negligence, and a violation of its undertaking. The diligence which a telegraph company is required to use in the delivery of a message will be determined to some extent, from the character and importance of the message. Upon humane grounds, messages like the one here involved, should be promptly delivered, and should be regarded as of more importance to the parties concerned than mere business messages, and, in promptness of delivery, should have preference over messages of the latter class. * * * From the information it had before it when it entered into the undertaking, the appellee was bound to know that mental anguish might, and most probably would, come to some person in case it failed to act promptly in transmitting and delivering the dispatch, and, therefore, such a result was contemplated when the message was delivered by the appellant to the appellee's agent at Jamestown, and is within the undertaking. * * * The appellant having suffered great mental anguish, because, as he alleges, of the failure to promptly deliver the message, it would be a harsh rule which would deny to him all redress except the mere pittance which he paid to have the telegram transmitted and delivered. Some of the authorities seek to draw a distinction as to the right to recover damages for mental suffering,

between cases where there may be a recovery for pecuniary loss and cases where there is, or can be, no pecuniary loss, to which class the present action belongs. With this distinction we have no sympathy, and confess we can see no good reason for it to rest upon. If a telegraph company undertakes to transmit and deliver promptly a message wherein dollars and cents are alone involved, and its negligence occasions loss, it is conceded by all the authorities that it may be compelled to respond in damages. Why? Because it has negligently broken its agreement, or, as is sometimes said, failed to perform a duty which it owed to the sender of the message, or the person to whom it is addressed, as the case may be. For the same pecuniary consideration it undertakes to transmit and deliver a message informing a husband of the dangerous illness of his wife, the wife of her husband, the parent of the child, the child of the parent, and it negligently fails to deliver the telegram, and, as a result, the sick relation dies without having the comforting presence of a husband, wife, father, mother, son or daughter, with all the benefit, physical and mental, which would follow. Is it to be said that, under such circumstance, the most that the telegraph company is liable for is nominal damages, because of greater mental anguish suffered by the sender of the telegram, who may be the father, mother, husband, wife or child? In our judgment, no such rule can, or should prevail. In failing to promptly deliver the telegram the telegraph company negligently fails to perform a duty which it owes to the sender of a telegram, and should be held liable for whatever injury follows, as the proximate result of its negligent conduct. It is not a mere breach of contract, but a failure to perform a duty which rests upon it as a servant of the public. In our opinion, the appellant is entitled to recover damages for the mental suffering which he has endured, and his measure of damages is the amount paid for the transmission of the message, and, in addition, what

would seem to be just, as a compensation for his mental anguish."

In the other case— *W. U. Tel. Co.* v. *Moore* (Feb., 1890), 76 Tex., 66—the Court held that "A message delivered for transmission to a telegraph company, containing the words, 'Billy is very low; come at once,' is sufficient to apprise the company that the message refers to a near relative of the person to whom it is addressed, and of the fact that mental suffering is likely to result from a failure to transmit the message with diligence and dispatch"; and says, "In the case of *Telegraph Co.* v. *Adams*, 75 Tex., 531, it was held, in effect, that a recovery could be had for mental suffering resulting from a failure to deliver · with diligence a telegraphic message announcing the sickness or death of a relative, provided the language employed in the message was reasonably sufficient to put the company upon inquiry as to the relationship between such person and the party addressed, and to apprise them that its object was to afford the party an opportunity to attend upon his relative in his last sickness, or to be present at the funeral, in case of death. The same principle was affirmed in the case of *Telegraph Co.* v. *Feegles*, 75 Tex., 537, decided at the same term, and *Telegraph Co.* v. *Broesche*, 72 Tex., 654 (1889)."

In *Telegraph Co.* v. *Cooper*, 71 Tex., 507 (1888), COLLARD, J., says: "Appellant claims that its demurrers to plaintiff's petition should have been sustained, because injury to feelings, disconnected from an actual personal injury, are exemplary damages, and the facts alleged are not sufficient to recover exemplary damages. The very question raised here was before the Supreme Court in the case of *Stuart* v. *Telegraph Co.*, 66 Tex., 580, and the Court, after discussing the *SoRelle Case*, 55 Tex., 310, and the two *Levy Cases*, 59 Tex., 543, 563, the case of *Hays* v. *Railroad*, 46 Tex., 272, and other authorities, uses the following language: 'But it is claimed that the mental is an incident to the bodily pain, and that,

without the latter, the former cannot be considered as actual damages. In cases of bodily injury, the mental suffering is not more directly and naturally the result of the wrongful act than in this case—not more obviously the consequences of the wrong done than in this case. What difference exists to make the claimed distinction? That it is caused by, and contemplated in, doing the wrongful act is the principle of liability. The wrong-doer knows that he is doing this damage when he afflicts the mind by withholding the message of mortal illness, as well as by a wound to the person.' The conclusion derived from the opinion in the case from which the foregoing extract is taken, is, that injury to the feelings, caused by the failure to deliver a message relating to domestic affairs, where the failure is the result of negligence on the part of the company or its servants, is an element of actual damages. The same principle was decided by the Commission of Appeals in the case of *Railway Co.* v. *Miller*, erroneously styled in the reports *Railway Co.* v. *Wilson*, 69 Tex., 739, and it was held that the right to recover would not depend upon the degree of negligence causing the injury. If the inexcusable negligence of the defendant's servants is found to be the proximate cause of the injury, damages may be recovered commensurate with the injury."

In *Telegraph Co.* v. *Simpson*, 73 Tex , 422 (decided 1889), the Court re-affirmed the same doctrine as does *Loper* v. *Telegraph Co.*, 70 Tex., 689, which is exactly like our case, except that the relationship was that of a mother who was prevented from being at her son's death-bed and burial by negligent delay in the delivery of the telegram.

In a recent case (1888) decided in the Supreme Court of Tennessee (*Wadsworth* v. *W. U. Tel. Co.*, 86 Tenn., 695), that Court affirms the same doctrine; and CALDWELL, J., after quoting the authorities to the effect that damages for mental anguish cannot usually be given in an action for breach of contract, says: "These are but illustrations

and applications of the general rule which we have already stated for the estimation of damages in actions for breach of contract. They serve the purpose of showing that, in the ordinary contract, only pecuniary benefits are contemplated by the contracting parties, and that, therefore, the damages resulting from the breach of such a contract must be measured by pecuniary standards; and that, where other than pecuniary benefits are contracted for, other than pecuniary standards will be applied in the ascertainment of the damages flowing from the breach. The case before us (so far as it is an action for the breach of contract) is subject to the same general rule, and the defendant is answerable in damages for the breach according to the nature of the contract, and the character and extent of the injury suffered by reason of its non-performance. The messages were sent for a particular purpose, which was disclosed upon their face, and of which the defendant had full notice. That purpose was not of a pecuniary nature. There was no offer or instruction to buy or sell anything, no proposition or promise with respect to any business transaction. The messages were of far greater importance to the receiver than any of these. Her brother was lying at the point of death in easy reach of her. It was information of this fact that the defendant first undertook to convey to her for a stipulated sum, and which, if conveyed promptly, would have enabled her to be with him in his last moments, and would have saved her the injury of which she complains. Then her brother died away from her; his body needed her attention, and would have received it, as owned, if the defendant had done its duty. It was intelligence of the death which the defendant agreed, in the second place, to communicate to her. The messages were proper in language and lawful in purpose. She was entitled to the information they contained, and to whatever benefits that information would have conferred upon her, even though such benefits

were mainly or altogether to the feelings or affections.   The defendant contracted that she should have those benefits, and that she should be spared whatever pain or anguish such information, promptly conveyed, would prevent.   By all the authorities, including our *Code*, it was the duty of the defendant to transmit and deliver these messages 'correctly and without unreasonable delay,' and in failing to do so, it became responsible for all loss or injury occasioned thereby.   Code, Mill. & V., §§ 1541–1542; *Marr* v. *Telegraph Co.*, 1 Pickle, 529; Gray Tel., §§ 81–82, *et seq;* Cooley Torts, 646–647; Whart. Neg., § 767; 3 Suth. Dam., 298–300; Shear. & Red. Neg., § 605.   This rule of damages is enforced by the Supreme Courts of Georgia, Virginia, and other States, even where the message is in cipher.   *Telegraph Co.* v. *Fatman*, 73 Ga , 285; 54 Amer. Rep., 877; *Telegraph Co.* v. *Reynolds*, 77 Va., 173; 46 Amer. Rep., 715, and reporter's note at end of case.   It is true that most of the adjudged cases in which telegraph companies have been required to respond in damages for their negligence, have involved questions of pecuniary loss, but we cannot agree that for that reason the liability should attach and be enforced in such cases only. Telegraphy is of comparatively recent origin, and the law concerning the duty and liabilities of telegraph companies has hardly passed its infancy, and cannot be expected, at so early a day in its history, to be settled, even in its important parts, by a long line of concurring decisions

"In addition to this, it is but reasonable to presume that such a flagrant breach of plain obligation, with respect to matters so near the heart and so accustomed to the respect of all mankind, as is here averred, has but seldom occurred, and, therefore, has but seldom been brought to the attention of the Courts of this country.   To hold that the defendant is not liable, in this case, for the wrong and injury done to the feelings and affections of Mrs. Wadsworth by its default, would be to disregard the purpose of the telegrams altogether, and

to violate the rule of law which authorizes a recovery of damages appropriate to the objects of the contracts broken; and, furthermore, such a holding would justify the conclusion that the defendant might, with impunity, have refused to receive and transmit such messages at all, and that it has the right in the future to do, as it has done in this case, or, at least, that it cannot be required to respond in damages for doing so. To such a result, we think no Court should submit. The telegraph company is the servant, rather than the master, of its patrons.

\*  \*  \*  \*  \*  \*  \*

"That the amount of damages allowable in such a case as this is not capable of easy and accurate mathematical computation is freely conceded; but that should not be a sufficient reason for refusing or defeating the right of action altogether, for the same objection may be urged with the same force in all cases where mental and bodily suffering are treated as proper elements of damage. It is very appropriately said, however, in the conclusion of the opinion in *SoRelle's Case*, that 'great caution should be observed in the trial of cases like this, as it will be so easy and natural to confound the corroding grief occasioned by the loss of the parent, or other relative, with the disappointment and regret occasioned by the fault or neglect of the company, for it is only the latter for which the recovery may be had; and the attention of juries might well be called to that fact.' Nor do we think that the suggestion that the decision we are making may encourage the bringing of other suits of a similar nature is of very great moment, as a matter for the consideration of the Court in its endeavour to reach a just and sound conclusion. It is rather to be hoped that instances of such dereliction of plain, easy, and important duty have not been very numerous in the past, and that they will seldom transpire in the future."

In the U. S. Circuit Court, in the case of *Beasley* v. *Western Union Telegraph Co.*, 39 Fed. Rep., 181 (decided 1889), the Court held that if, by cause of the unreasonable delay of a telegram, the husband was prevented from reaching his wife's bed before her death, he could recover a proper compensation for his disappointment and mental anguish. The Judge (MAXEY) very properly adds that caution should be observed by the jury to distinguish between the pain caused the plaintiff by the wife's death, for which the defendant was not responsible, and that caused by being deprived, by defendant's negligence, of the consolation of seeing his wife before her death.

This subject is one of the first impression in this State.

It is a matter of importance to the public that it should be settled what legal obligation, if any, rests upon the telegraph companies to deliver promptly messages of a social nature, not concerning pecuniary transactions. To many, and in many instances, they are far more important. If no pecuniary damages can be recovered for a breach of the duty to deliver such messages, beyond the recovery of the petty sum paid for transmission, the usefulness and value to the public of such corporations will be materially diminished. We have, therefore, cited quite fully from the most recent cases on the subject. There are older cases sustaining the same doctrine

In *SoRelle* v. *Telegraph Co.*, 55 Tex., 308, it was held that a telegraph company is liable for injury to the feelings of a son from delay in delivering to him a message announcing the death of his mother, whereby he was prevented from attending her funeral.

In *Stuart* v. *Telegraph Co.*, 66 Tex., 580, it is held that where, by gross negligence in delivering a telegram, plaintiff was prevented from seeing his brother in his last illness and attending his funeral, compensation for injury to feelings may be recovered. The same principle is intimated in *Logan*

v. *Telegraph Co.*, 84 Ill., 468., and there are other authorities. There are some authorities to be found of a contrary tenor (*West* v. *Telegraph Co.*, 39 Kan., 93; *Russell* v. *Telegraph Co.*, 3 Dak., 315, and some others), but they fail to satisfy us that they are consonant to justice and the "reason of the thing."

Damages for injury to the feelings, such as mental anguish or humiliation, are given, though there may be no physical injury, in many cases. They are allowed where a party is wrongfully put off a train (3 Suth. Dam., 259); in actions for breach of promise of marriage; in actions for slander and libel (*Terwiliger* v. *Wende*, 17 N. Y., 54); in actions for malicious arrest and prosecution (*Fisher* v. *Hamilton*, 49 Ind., 341); in actions for false imprisonment (*Stewart* v. *Maddox*, 63 Ind., 51); for illegally suing out an attachment (*Byrne* v. *Gardner*, 33 La. Ann., 6); for *crim. con.* and for seduction, and in other cases. Damages for injured feelings were also allowed where a conductor kissed a female passenger against her will. *Craker* v. *Railroad*, 36 Wis., 657. In actions by a father for seduction of a daughter, by a fiction of law, the damage is laid *per quod servitium amisit*, but the recovery is generally out of all proportion to any possible valuation of the services, and it is well understood that, in fact, compensation is not given for them but for the wounded and outraged feelings of the parent. We see, therefore, no reason why the doctrine of compensation for injury to feelings should not embrace a case like the one before us.

When a passenger, while traveling on the cars, is injured by a collision or other negligence, though there is a breach of the contract of safe carriage, yet the plaintiff can elect to hold the carrier liable in tort for the negligence which caused the injury. *Wood* v. *Railway Co.*, 32 Wis., 398; *Craker* v. *Railroad*, 36 Wis., 657–675, and cases cited.

By analogy, when there is an injury caused by negligence and delay in the delivery of a telegram, the party injured is entitled to sue *in tort* for the wrong done him. In *Stuart* v.

*Telegraph Co.*, 66 Texas, 580, it is said: "We have no forms of action or technical rules which can prevent a plaintiff, upon a statement of the facts of his case, from recovering all the damages shown to be sustained. If the facts stated show a breach of contract, and also that the breach is of such a character as to authorize an action of tort, all the damages for the thing done or omitted, either *ex contractu* or *ex delicto*, may be recovered in the one action." To the same effect, *Gulf R. R. Co.* v. *Lacy*, 59 Tex., 547, and *Wadsworth* v. *Telegraph Co.*, 86 Tenn., 695.

It seems to us that this action is in reality in the nature of tort for the negligence, and that, as is usually the case in such actions, the plaintiff is entitled to recover, in addition to nominal damages, compensation for the actual damages done him, and that mental anguish is actual damage.

It is very truthfully and appropriately remarked by a learned author that "the mind is no less a part of the person than the body, and the sufferings of the former are sometimes more acute and lasting than those of the latter. Indeed, the sufferings of each frequently, if not usually, act reciprocally on the other." 3 Suth. Dam., 260. And Cicero (who certainly may be quoted as an authority among lawyers) says, in his Eleventh Philippic against Anthony, "*Nam quo major vis est animi quam corporis, hoc sunt graviora ea quæ concipiuntur animo quam illa quæ corpore.*" "For, as the power of the mind is greater than that of the body, in the same way the sufferings of the mind are more severe than the pains of the body."

The difficulty of measuring damages to the feelings is very great, but the admeasurement is submitted to the jury in many other instances, as above stated, and it is better it should be left to them, under the wise supervision of the presiding Judge, with his power to set aside excessive verdicts, than, on account of such difficulty, to require parties

107—25

injured in their feelings by the negligence, the malice or wantonness of others, to go without remedy.

Scott & Jarnigan on Telegraphs, § 418, says that damages for gross negligence in the delay of a telegram, whereby the feelings of the parties are outraged, are vindictive or exemplary, and largely in the discretion of the jury; that they are given rather to punish the offender than to recompense the party injured, and some of the authorities above referred to support that view. Our own opinion, however (certainly when no malice is alleged), is that they are awarded as compensation to the plaintiff for the wrong he has sustained in the mental anguish needlessly inflicted on him by the negligence of the defendant. Sedg. Dam., 35.

The demurrer was properly overruled.

*Per Curiam.*                                              No error.