E. E. McPeek v. Western Union Telegraph Company, Appellant.

**Non-Delivery of Telegram :** DEFENSES.  A message to plaintiff in relation to the arrest of an accused read: "Come on first train." The message was delayed, and the plaintiff failed to secure the arrest.  *Held,* that, in an action against the telegraph company to-

recover the amount of the reward claimed to have been lost by the company's negligence, it is no defense that, even if the message had been delivered, the arrest could not have been made because the train did not reach such place in time, where plaintiff could have reached same by private conveyance.

**Jury Question:** Whether an agent of a telegraph company exercised reasonable diligence in attempting to deliver a message is a question for the jury, where he testified that he rapped loudly and repeatedly upon the door and received no response, and the daughter of the sendee testified that she was in the house and had not retired at that time but heard no noise at the door, and the sendee and his wife testified that they heard no such noise and that they would have been likely to have heard it had there been any.

PROXIMATE DAMAGES. Damages in an action against a telegraph company for its failure to promptly deliver a message are not limited to those which might reasonably have been within the contemplation of the parties, but recovery may be had for all the injurious results which flow therefrom by ordinary natural sequence without the interposition of any other negligent act or overpowering force.

RULE APPLIED. Plaintiff arranged with others for the capture of an accused, pursuant to which one of the former telegraphed him, "Come on the first train." The message was delayed and the plaintiff sued, alleging as his damages the reward offered by the governor for the capture of such accused, which he lost on account of the negligent delay. The company had no actual notice of the reward, but its agent at the point of destination knew that plaintiff was expecting a message relating to the capture of the accused and that prompt delivery was required. *Held*, that such damages were not too remote.

SAME. The fact that plaintiff did not know that the reward had been offered at the time of the delivery of the message for transmission does not affect his right to recover, as he understood it would be offered and was acting to secure it.

SAME. A telegraph company whose agent knew that the sendee of a telegram was expecting a message which would relate to the capture of a criminal, and that prompt delivery was required, is charged with knowledge that a reward might be made for such capture, and might reasonably reckon on such a contingency in omitting its duty to promptly deliver the message.

AGENCY. A telegraph company whose agent received a message and undertook to deliver it while acting within the scope of his agency, although not within the hours fixed for the active discharge of his duties, is not relieved from its obligation to

deliver the message because it was received to be delivered out of office hours.

JURY QUESTION. Where plaintiff sued for the amount of a reward which he lost by failure of a telegraph company to deliver a message in relation to the arrest of an accused, the question of whether he would have succeeded in making the arrest, if the message had been delivered, is for the jury.

Evidence: SECONDARY: *Records of executive office.* Code, section 66, provides that the Secretary of State shall have charge of papers which may be deposited in his office for keeping, and section 4649, that acts of the executive are proved by the records of the state department. *Held,* that a copy of a proclamation of the Governor offering a reward for the arrest of a person, certified by the Secretary of State to be a record on file in his office, is admissible in lieu of the original.

RELEVANCY. Plaintiff and others made an arrangement for the capture of an accused, pursuant to which one of the former sent a telegram to plaintiff to come. The telegram was delayed, thereby frustrating the capture. *Held,* that in an action against the company for damage occasioned by the delay, testimony by plaintiff and his colleagues as to the arrangement made between them is admissible, as bearing upon the probability of capture had the telegram been promptly delivered.

IMPORTANCE OF TELEGRAM. Extrinsic evidence is admissible to show that a telegraph company had notice of the importance of a message delivered to it for transmission.

BURDEN OF PROOF. The burden is on plaintiff to prove that, in all reasonable probability, the loss claimed by him to have been sustained by the failure of a telegraph company to deliver to him a message resulted from the negligence of the company.

*Appeal from Henry District Court.*—HON. M. A. ROBERTS, Judge.

THURSDAY, JANUARY 26, 1899.

FROM a judgment for damages alleged to have been occasioned by the negligence of the defendant in failing to promptly deliver a telegram, it appeals.—*Affirmed.*

*Blake & Blake* for appellant.

*John D. Dill* and *W. I. Babb* for appellee.

Ladd, J.—September 20, 1896, after mortally wounding John Finley, the marshal of Morning Sun, Orman McPherson fled. A few days later the plaintiff saw McPherson's wife, who promised to assist him in procuring the arrest of her husband. McPeek obtained McPherson's pension papers from Keithsburg, Ill., for her and she advised him (being in secret correspondence under an assumed name) of having these, and he came to her room at the hotel at Morning Sun, where she was employed as cook, October 22, 1896, at about 10 o'clock P. M. (having so arranged earlier in the evening), and there remained until between 3 and 4 o'clock the following morning. Before coming in, he gave up his revolvers, and she placed them in a bureau, where they remained during his stay. She had agreed to write to McPeek when she expected her husband, but, if he came unexpectedly, then to telegraph him. At about 7 o'clock P. M. of the twenty-second, she delivered to the defendant's agent at Morning Sun this telegram: "E. E. McPeek, Winfield. Come on first train. Answer. M. E. M."; telling him she wanted it "sent right away and delivered, and wanted an answer." Ridgeway, the agent at Winfield, usually closed his office at 6 o'clock, but was ordinarily at the station at about 9 o'clock. He received the message at 9:15 o'clock P. M., and carried it to the plaintiff's house, reaching there at about 9:30. After repeatedly rapping on the door, and being unable to arouse any one, as he says, he placed the message over the door knob, with the end of the envelope between the door and the jamb, where it was found the next day at between 9 and 10 o'clock A. M. It seems, the agent supposed the family was away from home, and would find it upon their return. They had in fact retired, and all testify that they did not hear the rapping of Ridgeway, or any noise at the door, and that they would have heard it, had there been any. The only train, carrying passengers, leaving Winfield for Morning Sun, a distance of about twelve miles, left the former place

at 6 o'clock A. M.   McPeek had told Ridgeway he was making an effort to capture McPherson, and might get a telegram from Morning Sun concerning the matter, and that if a message came, and he was unable to find him, to deliver it to Siberts, a constable.   Both had repeatedly called at the office for such a telegram.   It also appears that Siberts, by direction of McPeek, had arranged for a team at the livery stable and a driver to be ready for him at any time, and that Siberts was to go with McPeek in case McPherson should come to Morning Sun.   The constable at the latter place, and another, had agreed to assist him, though not advised as to the nature of the business, except that it was to make an arrest.   The evidence was such that the jury was warranted in finding the facts as stated, though it must be added that Ridgeway denies having previously talked with either the plaintiff or Siberts; and McPherson, who was afterwards arrested, declared he was not at Morning Sun as testified by his wife, and did not correspond with her.   On the twenty-first day of October, 1896, the governor of Iowa, by proclamation, offered a reward of three hundred dollars for the arrest of McPherson, and his delivery to the proper authorities.   The plaintiff's action is based on the allegation that he lost this reward through the negligence of the defendant in not delivering the message on the evening of October 22d.   With these preliminary statements, we shall be able to consider the different questions presented by the record.

I.   A copy of the governor's proclamation, duly certified by the secretary of state, was received in evidence over the objection of defendant.   That such a reward was authorized by section 58 of the Code of 1873 is not questioned. The method of making the offer is not pointed out, but it is to be paid upon the certificate of the governor.   Usage has approved offering such rewards by way of proclamations, and this fully complies with the statute.   That the original proclamations made by the executive of a state should be preserved, admits of no doubt.   The statutes make no express provision

for such preservation, but by section 66 the secretary of state "shall have charge of and keep  *   *   * papers which are now or may be hereafter deposited to be kept in his office." The secretary certified that he was the custodian of the record of the official acts of the executive department, and that the proclamation was a part of the files of his office. We take it, then, that this was deposited, to be kept by the secretary of state. Section 4649 provides, in substance, that acts of the executive of this state are proved by the records of the state department. The very evident purpose is to avoid the necessity of calling the governor before a co-ordinate branch of government to give evidence or answer for any of his acts. While the statute does not in express terms make such papers a part of the files to be kept and preserved by the secretary of state, we are of opinion that section 66 is broad enough to include them, that by fair implication section 4649 authorizes them to be so kept, and that, under sections 4649 and 4635 of the Code, a certified copy thereof is admissible in evidence in lieu of the originals.

II.   The defendant also interposed objections to the testimony of the plaintiff, Siberts, and Mrs. McPherson to the arrangement made between them with reference to the capture of McPherson. This was original, and not hearsay, evidence. It related to circumstances and facts essential to be proven as leading up to the sending of the telegram, and had a direct bearing upon the probability of the plaintiff effecting the arrest of McPherson, had the telegram been promptly delivered. It was necessary to show the exact situation, and all that had been done to accomplish that purpose. The appellant is impressed by the danger of fraud in this class of evidence. It is suggested that, if there be possibility of fraud, it may readily be obviated by the exercise of diligence.

III.   It is insisted that the damages were remote, and not such as either party might have contemplated from the

wording of the message. But extrinsic evidence was admissible to show that defendant had notice of the importance of the message. *Cable Co. v. Lathrop*, 131 Ill. 575 (23 N. E. Rep. 583); *Telegraph Co. v. Edsall,* 74 Tex. 329 (12 S. W. Rep. 41). The appellant argues the case on the theory that the action of plaintiff is for the breach of contract. He made no contract with the defendant. This is conceded by appellant in its opening argument, and denied in its reply. The first impression was undoubtedly the correct one. The contract was with the sender of the message, and whether recovery might be had for breach thereof, because made for plaintiff's benefit, we need not determine. This action is based on the negligence of the defendant in the performance of a duty in its public capacity as a common carrier of messages. In all such actions, sounding in tort, the injured party is not limited to damages which might reasonably have been within the contemplation of the parties, but recovery may be had "for all the injurious results which flow therefrom, by ordinary natural sequence, without the interposition of any other negligent act or overpowering force." *Mentzer v. Telegraph Co.* 93 Iowa, 757; Code, section 2163; *Telegraph Co. v. Du Bois,* 128 Ill. 248 (21 N. E. Rep. 4); *Telegraph Co. v. Allen,* 66 Miss. 549 (6 South. Rep. 461); *Ellis v. Telegraph Co.* 13 Allen, 226; *Telegraph Co. v. Fenton,* 52 Ind. 1; *Smith v. Telegraph Co.* 83 Ky. 104; *Milliken v. Telegraph Co.* 110 N. Y. 403 (18 N. E. Rep. 251); *Young v. Telegraph Co.* 107 N. C. 370 (11 S. E. Rep. 1044); *Telegraph Co. v. Adams,* 75 Tex. 531 (12 S. W. Rep. 857). There was evidence tending to show that immediate delivery was requested, and that the agent at Winfield knew that McPeek was expecting a message, that it would relate to the capture of McPherson, and that prompt delivery was required. If so, while he may not have known of the reward being offered, he may well be credited with understanding that McPeek was putting forth his efforts to accomplish a

purpose from which he anticipated some benefit to accrue to himself. The law authorizes the offering of such rewards, and it is not too strict a rule to hold the defendant responsible for such losses as may reasonably be anticipated to follow its negligence, whether informed definitely what these may be or not. It was charged with knowledge that such a reward might be made, and it might reasonably reckon on such a contingency, in omitting its duty with reference to such a message. Nor was the plaintiff advised that the reward had actually been offered on October 22d, though he understood it would be, and was acting to secure this and others proposed by local officers. That the omission of the defendant caused greater loss than he then supposed, does not affect its liability, or his right of recovery. Certainly the loss of the reward was the direct result of the failure to arrest and deliver McPherson to the proper authorities, for this was the very condition of its payment.

IV. The burden was on the plaintiff to prove that in all reasonable probability the loss resulted from the negligence of the defendant. *Hendershott v. Telegraph Co.* 106 Iowa, 529. Had the plaintiff proceeded by team to Morning Sun, with the assistance of the two constables and another, there seems no good reason to doubt that he would have arrested McPherson, who had been disarmed by his wife. This is not absolutely certain, for many contingencies may be supposed which could have intervened. While these might well be considered, they do not warrant us in saying that these men would not have accomplished that which has often been done before, and which is ordinarily done by officers in like situation. Whether they would in all probability have succeeded, was for the jury to determine.

V. It is suggested that, as the train did not go until 6:06 in the morning, even if the message had been delivered the plaintiff could not have reached Morning Sun in time to make the arrest. But the plaintiff had made every arrangement to go by team. This message was understood

by the plaintiff to require immediate attention owing to his agreement with Mrs. McPherson.

VI.    It may be that the defendant can fix office hours which are reasonable, and that those from 8 A. M. to 6 o'clock P. M. are not unreasonable. This we do not decide. But see *Telegraph Co. v. Harding*, 103 Ind. 505 (3 N. E. Rep. 172); *Given v. Telegraph Co.* (24 Fed. Rep. 119). The company received this message, if Mrs. McPherson is to be believed, with the understanding that it was to be delivered at about 9 o'clock. The agent at Winfield received it, and the company, having undertaken to deliver it, was bound to do so with reasonable diligence. Thompson on Electricity, section 300. He was acting within the scope of his agency, although not within the hours fixed for the active discharge of his duties. This could not relieve the company from discharging the obligation incurred by receiving the message to be delivered out of office hours.

VII.    The defendant asserts that no negligence in failing to deliver the message has been shown. If the testimony of Ridgeway be accepted as true, it might be that, in loudly rapping on the door repeatedly, and receiving no response, he exercised reasonable diligence. This is in dispute. The daughter of the plaintiff testified that she was at his home from 9 o'clock P. M., and did not retire until a half hour later, and that she heard no noise at the door. Mr. and Mrs. McPeek also testified that they heard no such noise, and that they would have been likely to have heard it, had there been any. Whether Ridgeway made any effort to arouse the family is put in question by this evidence. If he was advised of the importance of the message, as claimed by the plaintiff, he was bound to exercise diligence accordingly, and whether he so did was for the determination of the jury.

Some other matters are discussed, but they are not of sufficient importance to call for special attention. We dis-

cover no error in the record, and the judgment must be AFFIRMED.