**FORD v. NCNB CORPORATION**

[104 N.C. App. 172 (1991)]

No error.

Chief Judge HEDRICK and Judge EAGLES concur.

---

WILSON FORD, PLAINTIFF v. NCNB CORPORATION, DEFENDANT

No. 8926SC1288

(Filed 1 October 1991)

**1. Banks § 45 (NCI4th)— misplaced deposit—liability to employee making deposit**

The trial court did not err by denying defendant's motions for a directed verdict and for judgment notwithstanding the verdict in an action to recover damages suffered when defendant lost a deposit made by plaintiff for his employer. The asserted basis for the motions was that the evidence does not indicate that the lost deposit was a proximate cause of plaintiff's employment being terminated, but the loss of his job was not the only damage the evidence shows that plaintiff sustained and evidence was presented indicating that the loss of the deposit proximately caused plaintiff to lose his job.

**Am Jur 2d, Banks §§ 428, 430, 431.**

**2. Limitation of Actions § 4.2 (NCI3d)— negligence—loss of deposit—amendment—not barred**

An action for damages incurred when defendant lost a deposit made by plaintiff for his employer was not barred by the statute of limitations. Defendant's contention that the original pleading as to breaching a bailment was not notice of the occurrences and transactions upon which the amended negligence claim is based has no merit; the amended pleading does not allude to any new occurrence or transactions, but merely characterizes differently the same occurrences and transactions that were proven at trial.

**Am Jur 2d, Limitation of Actions §§ 219-222, 228.**

**3. Damages § 22 (NCI4th)— mental and emotional distress—no physical contact**

The trial court did not err by permitting plaintiff to recover damages for the mental and emotional distress caused by de-

FORD v. NCNB CORPORATION

[104 N.C. App. 172 (1991)]

fendant's negligence which did not involve any physical contact with plaintiff where plaintiff alleged damages arising from the negligent loss of a deposit made by plaintiff for his employer. The impact rule, devised for circumstances markedly different from those present here, is no reason for denying redress for consequences so naturally and obviously resulting from a defendant's neglect in handling money duly delivered to it.

**Am Jur 2d, Damages § 252; Fright, Shock, and Mental Disturbance §§ 15, 25, 55.**

APPEAL by defendant from judgment entered 7 July 1989 by *Judge Shirley L. Fulton* in MECKLENBURG County Superior Court. Heard in the Court of Appeals 31 May 1990.

On 19 August 1987 plaintiff brought this action to recover damages which allegedly resulted from defendant bank losing, for about two years, $5,000.15 that he placed in one of defendant's night depositories for his employer, A&P. The only theory of liability initially alleged was the breach of a special bailment in regard to the deposit. The complaint alleged that the bank's failure to promptly credit the deposit to A&P or properly explain its failure to do so caused plaintiff to lose his job and suffer a loss of earnings, emotional anguish, humiliation, scorn and derision. On 17 May 1989, a few weeks before trial, the court permitted plaintiff to file an amendment to the complaint which alleges that defendant negligently failed to have the depository properly searched for the deposit bag that was lodged in it, though it knew or should have known that the bag could be lost in the depository and that its failure to locate the deposit would likely damage plaintiff. Defendant denied all the material allegations of the complaint and amendment and pleaded as a further defense the three-year statute of limitations. Following a trial of the two issues submitted, the jury found that defendant's negligence damaged plaintiff in the amount of $100,000 and judgment was entered for that amount. Plaintiff's evidence pertinent to the questions presented, when viewed in the light most favorable to him, indicates the following:

In February, 1984 when plaintiff was twenty years old, A&P asked him to accept employment as a manager trainee at its Park Road store in Charlotte, and while so employed he was in effect the assistant manager of the store. Plaintiff, then attending Johnson C. Smith University in Charlotte, had been a hard working, effi-

FORD v. NCNB CORPORATION

[104 N.C. App. 172 (1991)]

cient, well regarded part-time employee of A&P since he was a junior in high school. One of plaintiff's frequent responsibilities as a manager trainee was to deposit the store's daily receipts in the night depository of NCNB's branch facility on Park Road. The instructed procedure for accomplishing that task was as follows: Count and itemize the currency and checks to be deposited; put the funds and a deposit slip in a specially numbered, lockable bag furnished by the bank and put a duplicate deposit slip in the store safe; lock the bag and take it to the branch depository; unlock the depository door with a key furnished by the bank, drop the bag in the depository, close the door and lock it; unlock and reopen the door and look in the depository to make sure that the bag is not visible and has dropped out of sight into the vault inside the building; re-close and re-lock the depository door. The bank's routine in processing night deposits was as follows: Each morning two bank employees working together opened the vault, logged in each deposit bag that was there, checked its contents against the deposit slip, and left the bag and validated deposit slip for the customer to pick up at its convenience.

On 31 July 1984 the store's receipts for deposit amounted to $5,000.15 and plaintiff followed the instructed procedure in making the deposit. When the two bank employees opened the depository the next morning A&P's bag was not found and the A&P employee who called for it was so informed. A few days later, the bag still not having been found, the bank reported the missing deposit to A&P. Mr. Waters, the Park Road A&P store manager, went to the bank and told Ms. Moss, the branch manager, that plaintiff stated that he deposited the bag and asked the bank to investigate. The bank's investigation consisted only of again looking into the depository, which others had already done to no avail, and reexamining the bank's log as to deposit bags received. The depository was not dismantled and its inner mechanisms were not searched, and neither the Mosler Safe Company, which maintained the night depository, nor Diabold Company, Inc., which installed it, was asked to assist in the investigation. The depository was under the exclusive control of the bank and only the bank had the ability or authority to dismantle or search it. After several conversations between A&P's store manager, Mr. Waters, and various bank employees, the bank's position was that it had not received the deposit and would not credit it to A&P's account. Ford was not told that the deposit was missing and had not been credited to

**FORD v. NCNB CORPORATION**

[104 N.C. App. 172 (1991)]

the store's account until late September, 1984, when he was questioned about mislaying or losing the bag and submitted to a polygraph test at the store's request. After the test indicated that some of his answers were deceptive, A&P terminated plaintiff's employment on 9 October 1984 and so advised the bank a few days later. On 19 June 1986 the lock on defendant's night depository was jammed by another customer's misuse and the bank called Mosler Safe Company to repair it. When Mosler's technician began working on the depository he heard a scraping sound and upon removing the head of the depository found the missing deposit bag. After learning that the "lost" deposit had been found A&P's store manager offered Ford his job back, which he declined.

During the first few months after plaintiff was discharged in trying to obtain employment he truthfully told prospective employers what had happened at A&P and was not hired. After he stopped listing A&P as a former employer he immediately obtained a job at minimum wages and within a few months thereafter was earning more than he did at A&P. Before the deposit bag was lost plaintiff enjoyed a good reputation among all the company employees and on a scale of one to ten the store manager had rated him as a ten. He was outgoing and sociable, helped to support his mother and three younger brothers, and was paying for a new car on the installment plan. After being discharged he became withdrawn and lost both sleep and weight. When his "friends" either avoided him or teased him for refusing to share the "lost" money with them he was embarrassed and depressed and would sit in his room for hours wondering what could have happened to the deposit bag. He felt that his inability to help support his family was a loss of his manhood. His new car was repossessed when he could not make the payments and his good credit rating was ruined.

*Ferguson, Stein, Watt, Wallas, Adkins and Gresham, P.A., by Jonathan Wallas, for plaintiff appellee.*

*J. J. Wade, Jr. and James H. Wade for defendant appellant.*

PHILLIPS, Judge.

[1] Defendant appellant poses three questions for us to determine, the first of which is whether the court erred in denying its motions for a directed verdict and for judgment notwithstanding the verdict. The asserted basis for the motions was that the evidence

does not indicate that the lost deposit was a proximate cause of A&P terminating plaintiff's employment. Since losing his job with A&P was not the only damage that the evidence shows plaintiff sustained as a consequence of the lost deposit the motions were without merit on their face, and were properly denied by the court. Furthermore, evidence was presented indicating that the loss of the deposit proximately caused plaintiff to lose his job. That the bank reported to A&P that $5,000.15 plaintiff said he delivered to the bank was not received, that A&P fired him after subjecting him to a polygraph test concerning the lost deposit, and that A&P offered to rehire him after the deposit was found is evidence from which the inference can be drawn that he was fired because of the lost funds. And as defendant expressly recognized in its brief, there was also testimony by A&P's store manager that he "understood that plaintiff was terminated because the deposit bag was lost." That this evidence may have been erroneously received, as defendant contends, did not eliminate it from the case as defendant mistakenly assumes. The evidence having been received, the court had to take it into account in determining whether the verdict was supported by evidence. *Harrell v. W. B. Lloyd Construction Co.*, 300 N.C. 353, 266 S.E.2d 626 (1980). Nor is it correct, as defendant further argues, that the testimony of A&P's personnel manager establishes without contradiction that plaintiff was fired for not following the store's requirement that the night depositor be accompanied by another employee. For the personnel manager himself contradicted this testimony by admitting that plaintiff would not have been fired if the lost deposit had been found within a few weeks, and plaintiff further contradicted it by testifying that he had not been told of any requirement to be accompanied when making night deposits and that both he and the store manager had made unaccompanied deposits without being reprimanded.

[2] The second question defendant presents is whether the court erred in refusing to submit an issue as to the negligence claim asserted in the amendment to the complaint being barred by G.S. 1-52(16), the three-year statute of limitations for personal injury actions. We treat the question as being whether the action is barred by the three-year statute of limitations, for under the circumstances recorded and argued the question is one of law, not fact. Since plaintiff's claim for negligence accrued, so defendant states, either at "the end of September, 1984," when "the Plaintiff first learned there was some problem with the July 31 deposit" or "about Oc-

**FORD v. NCNB CORPORATION**

[104 N.C. App. 172 (1991)]

tober 9, 1984" when A&P terminated his employment, and the amendment to the complaint was not filed until 17 May 1989, the answer to the question depends upon whether the original pleading alleging a breach of the bailment involving the deposit was notice to defendant of "the transactions, occurrences, or series of transactions or occurrences, to be proved pursuant to the amended pleading." Rule 15(c), N.C. Rules of Civil Procedure. Under the provisions of that rule if the original pleading was such notice the amendment will be "deemed to have been interposed at the time the claim in the original pleading was interposed," which was within three years of the accrual of the action. If, however, the original pleading was not such notice, the amended pleading came too late and the claim asserted is barred.

Defendant's argument that the original pleading as to breaching the bailment was not notice to it of the occurrences and transactions upon which the amended negligence claim is based has no merit. Defendant's liability as a bailee of the deposit rests upon negligence, 8 C.J.S. *Bailments* Sec. 48 (1988); *Millers Mutual Insurance Association of Illinois, et al. v. Atkinson Motors, Inc.,* 240 N.C. 183, 81 S.E.2d 416 (1954), and in the original pleading it was alleged that defendant breached the bailor-bailee relationship by failing to find and credit the deposit. In the amendment to the complaint it was alleged that defendant's failure to find and credit the deposit was negligence. The amended pleading does not allude to any new occurrence or transaction; it merely characterizes differently the same occurrences and transactions that the original pleading was based upon. Since both pleadings are based on the occurrences and transactions that were proved at trial and which support the verdict and judgment the negligence claim is not barred by the statute of limitations and defendant's arguments to the contrary are overruled.

[3] The final question defendant poses is whether the court erred in permitting plaintiff to recover damages for the mental and emotional distress caused by defendant's negligence which did not involve any physical contact with plaintiff. In arguing that plaintiff is not entitled to such damages, defendant relies upon statements in various cases, including *Williamson v. Bennett,* 251 N.C. 498, 503, 112 S.E.2d 48, 52 (1960), to the effect that "in ordinary negligence cases" recovery may not be had for mental or emotional distress in the absence of "some actual physical impact or genuine physical injury." But our Courts have allowed such damages to be recovered

FORD v. NCNB CORPORATION

[104 N.C. App. 172 (1991)]

in many unusual cases not involving physical contact where the emotional and mental stress suffered was an obvious and natural consequence of the particular negligence involved. One such case is *Kimberly v. Howland*, 143 N.C. 398, 55 S.E. 778 (1906), where negligence in blasting caused rocks to strike plaintiff's house, but not the plaintiff. Another such case is *Young v. Western Union Telegraph Co.*, 107 N.C. 370, 11 S.E. 1044 (1890), where damages for mental and emotional distress resulting from the negligent late delivery of a telegraph message indicating a spouse's last illness were approved. In *Young* the Court said, "If injury to the feelings be an element to the actual damages in slander, libel, and breach of promise cases, it seems to us it should equally be so considered in cases of this character." *Id.* at 375, 11 S.E. at 1045. The same rule applies in this extraordinary case where defendant bank's negligence in handling money duly and properly delivered to it naturally, if not inevitably, caused plaintiff to be suspected of dishonesty and suffer mental and emotional distress, though no physical contact either occurred or was threatened. For it is a commonly known fact of life that employees who fail to deposit money entrusted to them for that purpose are often suspected of embezzlement; that employees suspected of dishonesty are often shunned and derided by others; that honest persons unjustly suspected of dishonesty are embarrassed, worried, humiliated and frustrated; and that such mental and emotional stress and strain often causes a loss of sleep and weight. The impact rule, devised for circumstances markedly different from those present here, is no reason for denying redress for consequences so naturally and obviously resulting from a defendant's neglect in handling money duly delivered to it, and since the law does not require vain things it does not require medical proof of consequences that are as natural and obvious as those plaintiff suffered in this case.

In a case strikingly similar in its facts to this one, the Mississippi Supreme Court deemed the impact rule inapplicable and allowed the plaintiff to recover damages for emotional distress much like that which the plaintiff in this case suffered. In *First National Bank v. Langley*, 314 So.2d 324 (Miss. 1975), Langley, also an employee of A&P, deposited the day's receipts in the bank's night depository and was suspected of thievery after the bank reported that the deposit had not been received. The only significant difference between the cases is that Langley repeatedly requested the bank to check the depository and the bank, after making super-

ficial checks, incorrectly insisted that the bag could not have gotten hung up in the depository. Four members of the Court dissented from the decision, not because the "impact rule" was not applied, but because they were of the opinion that punitive damages should have been permitted, while the majority ruled otherwise.

No error.

Judges ARNOLD and COZORT concur.