PENNINGTON V. THE WESTERN UNION TELEGRAPH CO.

67   631
139   590

I. **Telegraph Companies**: NEGLIGENCE IN TRANSMITTING MESSAGE: MEASURE OF DAMAGES: PROSPECTIVE PROFITS. Plaintiff 's agent at Vicksburg, Michigan, telegraphed him the price at which he could buy a car load of apples, but the telegram as delivered purported to come from Vicksburg, Mississippi, where plaintiff had no agent, and to be signed by one unknown to plaintiff, in consequence of which plaintiff paid no attention to it. Afterwards the price of apples advanced, and plaintiff in buying was obliged to pay more than the price named in the telegram. *Held* that plaintiff 's loss was not greater than the difference between a car load of apples at the price named in the telegram, and such greater amount, if any, as a car load was worth in the same market at the time the telegram was sent; and that, there being no evidence of such difference, plaintiff was entitled to recover only the amount paid for the telegram.

*Appeal from Winneshiek District Court.*

MONDAY, DECEMBER 14.

ACTION for damages alleged to have been sustained by the negligence of the company in the transmission of a telegram. There was a trial to the court, and judgment was rendered for the plaintiff. The defendant appeals.

*Cooley & Akers*, for appellant.

*Cyrus Wellington*, for appellee.

ADAMS, J.—The telegram in question was delivered to the defendant at its office in Vicksburg, Michigan, by one A. B. Huntley, the plaintiff 's agent, and is in the following words:

"VICKSBURG, Michigan, October, 11, 1882.

"*To. George Pennington, Decorah, Iowa:* Can buy apples two dollars. Shall I ship one car?

"HUNTLEY."

How it was transmitted to the company's agent at Decorah

does not appear, nor is it material. It was read and written by the Decorah agent as follows:

"Dated VICKSBURG, Mississippi, 11.

"*To George Pennington, Decorah, Iowa:* Can buy apples two dollars. Shall I ship one car?

"HAULKEY."

This was the telegram delivered to the plaintiff. Having no agent at Vicksburg, Mississippi, and no agent anywhere by the name of Haulkey, the plaintiff paid no attention to the telegram, and made no order for apples at that time through Huntley, and afterwards the price of apples was higher, and in purchasing he was obliged to pay more than the price mentioned in the telegram. The court found that the plaintiff sustained damages in the sum of $122.35, and rendered judgment against the defendant therefor. The defendants assign as error that the court erred in allowing the plaintiff more damages than the amount paid for the telegram, to-wit, fifty cents and interest.

In *Hibbard v. W. U. Tel. Co.*, 33 Wis., 567, the court said: "Profits on a contract never made are quite too remote and uncertain to be taken into consideration." In the case at bar, the plaintiff merely lost an offer, and, if we were to apply the rule above mentioned, it would be clear that the plaintiff could not recover more than the cost of the telegram. But we need not go so far as to hold the above rule applicable. In no event could the plaintiff recover more than the value of the offer, and that could not be greater than the value of the contract would have been, in case the offer had been received and accepted. Now, the value of a contract for the purchase of property, where nothing is paid, is the difference between the amount agreed to be paid and such greater amount, if any, as the property may be worth in the market; and where damages are allowed for a breach of the contract, they are to be estimated as of the time of the breach. See Sedg. Dam., 313, and cases cited.

The offer in this case, which the defendant was asked to

transmit, was of a car-load of apples at two dollars, which it is said meant two dollars a barrel, and would have been so understood by the plaintiff. Now the loss of the offer was not greater than the difference between the price of a car-load of apples at two dollars a barrel, and such greater amount, if any, as a car-load was worth in the same market at the time the defendant's liability accrued. No rise or fall in the price of apples after that could change the defendant's liability. But the offer contained in the telegram is not an offer of specific apples at two dollars, nor of a given kind or quality; nor is there any evidence tending to show that apples of any kind or quality in the Vicksburg, Michigan, market were worth more than two dollars a barrel at the time of the defendant's failure to properly transmit the telegram delivered to it. Such being the fact, we are unable to see how the plaintiff has proven any damages beyond the cost of the telegram.

Many other questions are presented, but, in the view which we have taken of the case, they will not, we think, arise upon another trial.

REVERSED.

SUPPLEMENTAL OPINION.

ADAMS, J.—The plaintiff has filed a petition for a rehearing, in which he insists that the court has erred in its rule concerning the measure of damages. The plaintiff contends that the true rule is that where a contract of purchase is not entered into by reason of a loss of an offer of the contract through the negligence of the party intrusted with its transmission, the measure of damages is the difference between the contract price, as would have been offered, and such greater price as the commodity may bear at the time the party losing the offer obtained knowledge of the failure of transmission, by reason of which it had not been made. Several authorities are cited and relied upon, but in our opinion none of

them sustain the plaintiff's position. We can conceive that knowledge of the loss of an offer of a contract like the one in question—an offer for the sale of apples—might not be obtained until, in the progress of the season, sound apples would naturally be much higher, or it might not be obtained until the next season, when they might be much lower.

The general rule is that, where a person sustains an injury through the negligence of another, he is entitled to recover to the extent of the injury which the wrong doer should reasonably have apprehended. Under this rule, we thought that the loss of the offer could not be greater than the difference between the price which would have been offered, but for the failure of transmission, and the market price, if greater; and, as bearing upon that question, there was no evidence. It is true that, where a party has received an offer and *acted* upon it by an attempted acceptance, and governs himself upon the just supposition that he can rely upon a completed contract, and waits as long as he might reasonably wait, and he loses his contract through the negligence of the party charged with the duty of transmission, his damages are not necessarily to be estimated with reference to the point of time when there was a breach of the duty of transmission. In *True v. International Tel. Co.*, 60 Me., 9, the defendant was employed to transmit the acceptance of an offer of contract, and, by failure of the defendant, the plaintiff lost the contract, which was a contract of purchase, and the commodity rose in value while the plaintiff was relying upon the contract, and the court held that the plaintiff might recover as damages the difference between the contract price and the greater amount which the plaintiff was obliged to pay, in the exercise of reasonable diligence, after notice of the failure of the telegram. But that case, which seems to us the most favorable for the plaintiff of any cited, differs in important respects from the one at bar. The plaintiff had reason to suppose that he had a completed contract, and had bound himself to pay for the commodity, and must hold himself in readiness

to do so for such reasonable time as the transaction required.

Knowledge of the defendant's failure could not, in the nature of the case, be long kept from the plaintiff, and the rights of the plaintiff would then, or immediately thereafter, be fixed. The defendant was bound to know that the plaintiff would rely upon the contract for such reasonable time, and govern himself with reference to it. In the case at bar there was a mere uncommunicated offer. The plaintiff did not rely upon it in any proper sense, even if he expected it, because he did not know what it would be. Again, the time within which knowledge of the failure could be expected to come to the plaintiff, if ever, was entirely uncertain. Offers of sale are being constantly made by telegraph, and it will happen occasionally that an offer will be attempted, but will not really be made, on account of a failure of transmission. At what time knowledge of the failure, if ever, will come to the party to whom there was an attempt to make it, no one can foresee or estimate in the slightest degree. The rule contended for, it appears to us, would be dangerous in the extreme.

There is one other view of this case to which we desire to refer. The acceptance of the offer rested wholly in the plaintiff's volition. He was allowed to testify as to what he would have done, and the court made a finding as to what he would have done. We do not wish to be understood as holding that it was competent to go into an inquiry as to what the plaintiff would have done. It is not necessary to determine such question, and we do not undertake to do so. The plaintiff cites cases, and expressly calls our attention to them, in which it was held competent to show that an agent to whom a telegram of instructions was directed, but whom it did not reach, would have obeyed its instructions; but it is manifest that those cases are not strictly in point. We think that the petition for a rehearing should be

OVERRULED.