## C. P. HARPER, Respondent, v. WESTERN UNION TELEGRAPH COMPANY, Appellant.

### Kansas City Court of Appeals, February 10, 1902.

1. **Telegraphs: FAILURE TO DELIVER MESSAGE: EVIDENCE: JURY.** In an action to recover damages for failure of a telegraph company to deliver a message, the plaintiff must show that he did not get the message in time for his purposes and for that reason the damages accrued, and the testimony is reviewed and held sufficient to send the case to the jury on that question and the objection to the form of introducing the evidence was not sufficiently presented in the trial court.

2. **Trial Practice: EVIDENCE: AUTHORITY OF AGENT TO SELL LAND: SUFFICIENCY OF PROOF.** The authority of plaintiff as agent to sell certain real estate and receive a commission therefor was, under the evidence in this case, a question for the jury and it is not necessary that he prove every allegation of his petition if he proves enough to entitle him to recover.

3. **Telegraphs: CONTRACT TO DELIVER: CONSIDERATION: DIRECTION TO DELIVER.** A telegraph company may bind itself to deliver a message at a certain designated place without regard to the direction contained in the message itself, and the sender's interest in the matter can make no difference as the company may agree to deliver at both places; and the evidence is sufficient to send to the jury the question of contract and shows sufficient consideration for such contract.

4. **Evidence: CORPORATION AGENT: ADMISSIONS: RES GESTAE: HEARSAY.** The statements of an agent of a corporation regarding matter not in the line of his duty and made after the transaction in issue are not *res gestae*, but mere hearsay and not admissible.

5. **Trial Practice**: MISCONDUCT OF COUNSEL: CLOSING ARGU-
MENT.  Counsel in his argument should confine himself to the evi-
dence, and where he fails to do so and is unrebuked by the court
and the case for the plaintiff is a weak one so that the appellate
court may be justified in holding the misconduct may have in-
fluenced the jury, the judgment may be reversed.

Appeal from Jackson Circuit Court.—*Hon. John W. Henry,*
Judge.

REVERSED AND REMANDED.

*George H. Fearons* and *Karnes, New, Hall & Krau-
thoff* for appellant.

(1)   The evidence failed utterly to prove an agreement.
(2)   There was, on plaintiff's own testimony, no considera-
tion, and the alleged agreement was for that reason a mere
*nudum pactum,* null and void.   (3)   Plaintiff has no rights
growing out of the contract between defendant and Sherman,
the sender of the answer. Ford v. Postal Tel. Co., 27 So. 409;
Tel. Co. v. Wood, 57 Fed. 471; Cable Co. v. Ford, 117 Ala.
672, 23 So. 684; Tel. Co. v Dubois, 128 Ill. 248, 21 N E. 4;
Shingleur v. Tel. Co., 72 Miss. 100, 18 So. 425; Haubelt
Bros. v. Mill Co., 77 Mo. App. 672; Hughes v. Tel. Co., 79
Mo. App. 133, 141; Markel v. Tel. Co., 19 Mo. App. 80, 85.
(4)   The delivery of the answer in accordance with its direc-
tions to Lockwood for plaintiff was in legal effect a complete
and sufficient delivery to plaintiff, and thereafter defendant
did not have to make another delivery to plaintiff himself.
Western Union Tel. Co. v. Young, 13 S. W. 985, 77 Tex.
245; Western Union Tel. Co. v. Thompson, 31 S. W. 318;
Thompson v. Tel. Co., 30 S. W. 250, 10 Tex. Civ. App.
120; Western Union Tel. Co. v. Terrell, 30 S. W. 70, 10 Civ.
App. (Texas), 60; Western Union Tel. Co. v. Newhouse, 33
N. E. 800.   (5)   There was a failure of proof that plain-

tiff had a contract with the owner of the land for the sale thereof. (6) There was a failure of proof that any other person was negotiating with the owner of the land for its purchase, or that said land was sold to said other person. (7) The trial court erred in permitting plaintiff as a witness to state his opinion that it was too late when he received Sherman's answer to sell the land to the latter. (8) There was a failure of proof that plaintiff had any valid or binding contract of a commission of $440. (9) The court erred in permitting plaintiff as a witness to narrate a conversation, after he had received the answer from Lockwood, with defendant's agent in charge of the Ninth street office in which said agent is reported to have complained of and arraigned defendant's servants and agents in charge of the other office. Sweetland v. Ill. Miss. & Tel. Co., 27 Ia. 433; Akin v. W. U. Tel. Co., 48 N. W. 419; S. W. Tel. Co. v. Gotcher, 53 S. W. 686; Graddy v. W. U. Tel. Co., 43 S. W. 468. (10) The court erred in refusing to stop or correct plaintiff's counsel in declaiming in his argument to the jury against defendant because it was a great and rich corporation. Masterson v. Railroad, 78 N. W. 757, 102 Wis. 571; 2 Encyc. of Pl. & Pr., 744; Fathman v. Tumilty, 34 Mo. App. 236; Mahner v. Linck, 70 Mo. App. 380.

*E. P. Garnett* for respondent.

(1) There was a valid agreement made by defendant to deliver the answer to plaintiff's message at 1039 New York Life Building. (2) The duties and obligations which telegraph companies owe to the public in regard to the delivery of messages is regarded as sufficient considerations to support these agreements. Milliken v. W. U. Tel. Co., 110 N. Y. 403; W. U. Tel. Co. v. Snodgrass, 60 S. W. 308; Reed v. W. U. Tel. Co., 135 Mo. 661; Jones v. W. U. Tel. Co., 101 Tenn. 442; Sherill v Tel. Co., 117 N. C. 355. (3) Did

the defendant comply with this agreement? Most emphatically we say it did not.

BROADDUS, J.—This is a suit for damages against the defendant for failure to deliver a telegraph message at the place agreed upon. The plaintiff is a real-estate broker whose place of business is in Howell county, Missouri. The defendant company is engaged in the business of transmitting telegraph messages as its name denotes. Prior to the eighth day of January, 1900, one E. A. Sherman who resided in Sioux Falls, South Dakota, had been in Howell county and negotiating with plaintiff for the purchase of a tract of land in said county containing 880 acres, and these negotiations were continued by letter after he returned to Sioux Falls. Shortly prior to said date, the plaintiff went to Kansas City, Missouri, he says, in response to a telegram from some Kansas City parties, whose names are not disclosed, who he claimed had the "handling of the land" and saw them and they told him he could have the land upon cash payment, and to wire the intended purchaser immediately. It appears from the negotiations that Sherman did not want to pay all cash, although he was willing to pay the price demanded for the land.

The plaintiff on the eighth of January, and immediately after he was told to wire the intended purchaser, went to the office of defendant on Ninth street in said city, and wrote the following telegram to be forwarded to Sherman at his place of residence aforesaid, to-wit: "Terms cash. Perfect ab. furnished; other party waiting; wire quick." The defendant's agent noticed the important character of the telegram, and asked him where he wanted it delivered. He told him 1039 New York Life Building, that after six o'clock p. m. he would call for it himself at the office if not delivered before that time; whereupon the agent wrote upon the face and at the bottom of the telegram the following: "Send

ans. to 1039 New York Life Building; after 6 o'clock will call."

This message was forwarded with due dispatch to Sherman who received it the same day, and at 1:38 o'clock of that day sent the following:

"Sioux Falls, S. D., Jan. 8, 1900.

"To C. P. Harper, care J. E. Lockwood, Memphis and Ft. Scott Ry., Kansas City, Mo.  Send deed abstract, with sight draft, care Minnehaha National Bank."  (Signed) "E. H. Sherman."

This message was received some time in the afternoon of that day, and was delivered to Lockwood at the place it was directed to be delivered.  The plaintiff during said afternoon called many times at the Ninth street office and one of its offices connected with the New York Life Building, and also at its central office, and was told there was no message for him.  He called many times for the message at 1039 aforesaid.  Plaintiff learned on the next day in the afternoon that Lockwood had the message, at which time he says it was too late.  He says his commission was to be fifty cents per acre for the sale of the land.

The case was tried before a jury and a verdict rendered for the plaintiff for $467.72.  The defendant appealed. The defendant assigns many errors for a reversal of the case.

The plaintiff bases his action on the failure of the defendant to deliver the message of Sherman, the prospective purchaser of the land, at the alleged agreed place of delivery, and that he lost by reason thereof the commission of fifty cents an acre on a sale of said 880 acres of land.  The evidence of the plaintiff tended to show, that the said parties who were "handling the land," were not willing to hold the land for a further time for him to sell, but were willing to wait until he could telegraph Sherman, who could have it at two dollars per acre cash payment.  As has been stated, we have seen that said Sherman accepted the terms, but his mes-

sage was not delivered until the next day, and as the plaintiff says, too late.   He claims that the land was sold in the meantime to another purchaser and he thereby lost his commission.   It was necessary for the plaintiff to show that he did not get the message in time for his purpose, and that it was for that reason he lost the sale of the land and, as a consequence, his commission.   About all the evidence on this point was the answer of plaintiff to the following question:

"Q.   After you found out then, the next day, I will ask you, whether or not it was too late to close your trade with this man.   A.   It was."

The question and answer were objected to by defendant; as incompetent, irrelevant and immaterial, which objection was overruled.   The defendant contends that without this evidence the plaintiff could not have recovered.   That is certainly true.   The objections raised in this court are that the question is leading, and that the answer is a conclusion and not a statement of a fact.   The objection was not made on the trial that the question was leading, nor that the answer was a conclusion, and not a statement of a fact.   It was indispensable for the plaintiff to prove that the message was not delivered in time for his purpose, and the usual and proper manner to so do, was to show that the land had been sold to another party in consequence of the delay of the delivery of the message as agreed.   If the question and answer had been objected to on the specific grounds assigned here and the same had been overruled, it would be good grounds for reversing the case.   But the evidence was competent and not of course irrelevant; that is, it was evidence tending to show that the message did not arrive in time.   Both this court and the Supreme Court have condemned this general mode of objecting to the introduction of evidence. Guinotte v. Egelhoff, 64 Mo. App. 356; Western v. Flanagan, 120 Mo. 64.   And there are many cases to the same effect.

But admitting that the said statement of plaintiff was

competent evidence, the defendant still contends, that it does not prove that the land had been sold to another party during the delay of the delivery of the message. This statement taken alone would have hardly been sufficient for that purpose, but taken in connection with all the other evidence in the case, we think it was. We admit that the proof was somewhat inferential, but it was understood by the court and jury, that the land had been sold in the meantime. And as the defendant offered no evidence to contradict it, and although somewhat indefinite in its nature, it is enough to support a verdict. The defendant on this point cites, among many other cases, Graney v. Railroad, 157 Mo. 666. The cases referred to, are all to the effect, that where there is substantially no evidence to support a party's cause, the court will take his case from the jury, because there is nothing to submit to them. But we find no case wherein it is held that merely for the slightness of the prevailing party's evidence, tending to prove his allegations, an appellate court will reverse a cause.

And it is further contended that there is no evidence whatever tending to show any agreement between the plaintiff and the owner for a sale thereof and for a commission to be paid him; or if so, that he was limited in time to the eighth of January for making such sale. As before stated, the plaintiff's evidence was to the effect, that the parties who were "handling" the land telegraphed him in reference to it, and that he went to Kansas City, and when he got there, on the eighth of January, one of them told him, "Yes; we will let you have the land, if the party will pay the cash." As stated, the only difference between him and Sherman was as to the terms of the payment, which is also shown by the evidence of Sherman. When the Kansas City parties made the above statement to the plaintiff, they certainly understood that he had a purchaser in contemplation, and furthermore directed him to wire his man immediately. . Although the

names of the parties "handling" the land, nor the owner, is given, yet we are not prepared, for these reasons, to hold that there was no agreement or understanding of some kind that plaintiff was to have the sale of the land and a commission for selling it. If he was not to have the sale of the land, why was he directed to wire his man immediately. It is true that there was no evidence that his time to sell the land was limited to the eighth of January as alleged in the petition, but it is also alleged in the petition, that had the said message been delivered in time, he would have completed his negotiations with Sherman and closed the trade; and as it was shown he had been given time to telegraph to Sherman, and of course to get an answer, it became immaterial whether he proved the other allegation that his time was limited to the eighth of January. It was not necessary that plaintiff should have proven all the allegations of his petition, in order to recover, if he was, upon the proof of another allegation, entitled to recover. This is a familiar rule of practice.

It is further contended that there was no agreement, that defendant was to deliver to plaintiff the return message at 1039 New York Life Building. That the entry on the face of the telegram sent by plaintiff to Sherman amounted to only a direction, and if there was such an agreement it was a *nudum pactum*, without consideration. This, we think, is an entire misconception of the duty devolving upon a telegraph company, when it is directed by a sender of a message to the place of delivery of the answer. The agent took the message to be transmitted to Sherman, with the written direction to deliver the answer at 1039 New York Life Building, and it became as much a part of its duty to deliver the answer, if any, as it was then directed to do, as it was to transmit the message itself; and if no additional consideration was given therefor, it would not relieve it from responsibility for failure to deliver as directed, as it was shown by one of the rules

of defendant in evidence that it delivered all messages free within the established free delivery limits of the terminal office. This rule was printed upon the message in question and is a part of the contract for delivery. The rule further provides for a delivery outside of the free delivery limits, for which a special charge is made to cover the costs of delivery. But as it was established by evidence that 1039 New York Life Building was only one or two doors from the office of the defendant from where the message was sent, it is fair to presume that the place of delivery was within the free delivery limits. There is nothing better known than this rule of business of the defendant. It is a part of the history of the times, of which every one takes cognizance. It was made, we may say, as much in the interest of the defendant as that of the public; for both reap its good results, for in the absence of unexpected messages, none would be sent if not to be delivered, and the earnings of the defendant would be much decreased and the public would suffer much loss.

We find no difficulty in holding that there was a contract for the delivery of the message in question. The real reason why the said message was not delivered as agreed that it should be, was, there was a direction accompanying it, to deliver to Lockwood at a different place, and defendant's agents had overlooked or forgotten the place of delivery agreed upon, notwithstanding it was in writing and in their possession, and recorded in a book kept for the purpose. This was not excusable. It is practically conceded, that a telegraph company may bind itself to deliver a message at a certain designated place which it may have received addressed to such person, without regard to the direction contained in the message itself. Telegraph Co. v. Mitchell, 91 Tex. 459; Pope v. Telegraph Co., 9 Ill. App. 283; Milliken v. Telegraph Co., 110 N. Y. 403. Because the sender in this instance had an interest in the matter could make no difference, for the undertaking was to deliver at both places, and there was no good

reason why it was not done, because a telegram is not a thing of substance of the single number, but an intangibility until recorded upon paper, at which time its numbers may be multiplied to suit the occasion.

It is further contended that plaintiff failed to prove that he had any binding contract for a commission to sell the land. When asked what he was to receive for selling the land, his answer was "fifty cents an acre." He does not state with whom he had the contract, but we are left to infer that it was with the Kansas City parties, he said were handling the land. His answer is again in the nature of a conclusion, but still it is evidence. It was not objected to, but because it is incomplete in its character does not prevent it from having some probative force, especially if the contract was in parol. It would have been better to have detailed the contract, or if in writing, to have read it to the jury, but it seems that he was not called upon to do so.

The defendant complains of the admission of proof of what the defendant's agent in charge of the Ninth Street Station said several days afterwards, was error. When plaintiff asked him why the message was not delivered to his address, he answered in speaking of the central office of the defendant; "They need jacking-up, over at the other office. It ain't the first time they have done that kind of work. They need calling down." The defendant objected to this evidence and asked to have it stricken out. This the court refused to do. The statement made by the agent was not binding on the company, because it was not in the line of his duty, and no part of the *res gestae*, and besides it was hearsay.

The plaintiff's attorney, when arguing the case before the jury, was permitted to use the following language: "that the defendant was a great and rich corporation, composed of plutocrats, and that they took delight in overriding the rights of the common people." The defendant objected to

these remarks, but its objection was overruled by the court. It has been repeatedly held in this State, that a lawyer in his argument to the jury should confine himself to the evidence. See: Fathman v. Tumilty, 34 Mo. App. 236; Mahner v. Linck, 70 Mo. App. 380.

In view of the weakness of plaintiff's case, we are justified in holding that the said remarks may have had much to do in turning the scales of justice in his favor. This case, therefore, is one in which we feel that we would be justified in reversing the judgment for this cause alone. The remarks were made evidently with the motive of influencing the jury, made, it is presumed, in the heat of argument, and for that reason less reprehensible, but perhaps none the less effective. We do not agree with the defendant in its criticism of the court's instruction to the jury; for it seems to cover fairly and fully the whole case, and is not in the nature of a comment on the evidence.

For the reasons assigned the cause is reversed and remanded. All concur.