CASE 104.—ACTION BY THE LOUISVILLE COTTON OIL COM-
PANY AGAINST THE POSTAL TELEGRAPH-
CABLE COMPANY.—November 30, 1909.

## Postal Telg. Cable Co. v. Louisville Cotton Oil Co.

136   843
138   504

Appeal from Jefferson Circuit Court (Common Pleas Branch, First Division).

EMMET FIELD, Judge.

Judgment for plaintiff, defendant appeals.—Reversed.

1.  Exceptions, Bill of—Contents.—The office of a bill of exceptions is to bring before the court the record, authenticated by the trial judge, of things that transpired in the trial court, that do not appear on the record book of the trial court, and it is not necessary to put in the bill of exceptions the pleadings, orders of court, or any motion or paper that is mentioned in the orders of court which have been offered or filed as a part of the record, though it may not be copied on the record book, as the fact that it is there mentioned is sufficient identification to make it a part of the record.

2.  Appeals and Error—Record—Contents—Depositions.—The bill of exceptions spoke of depositions for plaintiff, after naming the witnesses who gave evidence by deposition, and recited that the depositions would follow immediately after the bill of exceptions in the clerk's transcript, and the depositions so followed. As to the depositions for defendant, the bill recited that the depositions of the witnesses named were set out in the transcript of the evidence, which was not true; but they were copied by the clerk in his record. The stenographer's transcript of the evidence, approved by the trial judge, stated that the depositions of the designated witnesses were in the record on appeal and could be considered.

3.  Appeal   and   Error—Record—Contents—Depositions.—While
the depositions filed with the clerk should be copied in the
record he makes for the court on appeal, and should not be
embodied in the transcript made by the official stenographer,
under Ky. Stat. section 4639, which contemplates that the
stenographer shall only take notes of and make a transcript
of the oral testimony, yet where the depositions appear
in the stenographer's transcript, signed by the judge, or
where the bill of exceptions shows that the depositions of
named witnesses were read as evidence, and they are copied
by the clerk in the record made out by him, or where the
stenographer's transcript shows that the depositions of
named witnesses were read, and they are copied by the clerk
in the record, the depositions will be considered as a part
of the record.

4.  Sales—Offer—Acceptance.—A proposition to sell or buy must
be accepted in the very terms in which the proposition is
made, and, where any qualifications or conditions are added
to the acceptance, the offer is not accepted and no contract
is made.

5.  Contracts—Terms Implied.—What is mutually understood and
agreed to by the parties enters into and becomes a part of
the contract.

6.  Customs and Usages—As Part of Contract.—A well establish-
ed custom of the trade to which a contract relates enters
into and becomes a part of it when the custom is known
and understood by the parties and the contract is made
with reference to it.

7   Contracts—Mutual Agreements.—Where an offer was to buy
ten tanks of bleachable prime summer oil at twenty-seven
cents and the acceptance added the words, "Memphis Ex-
change rules and arbitration," and there was evidence that
the quoted words did not impose any condition not contem-
plated by both parties, there was a binding contract.

8.  Telegraphs and Telephones—Delay in Delivery of Messages—
Damages—Knowledge of Probable Consequences—A telegraph
company is not liable for damages for negligent delay in the
delivery of a message that it could not reasonably know or
contemplate, when it received the message, would follow
from its failure to transmit and deliver with reasonable dili-
gence.

9.  Damages—Contracts—Special Damages.—Parties contracting
contemplate that a failure to perform it will result in some
damage to the party not in default; but special damages

are not recoverable unless they were within the contempla-
tion of the parties when the contract was made, or the de-
faulting party had notice that such damages would result
from its breach.

10. Telegraphs and Telephones—Negligent Delay in Delivery of
Messages—Special Damages—Knowledge of Consequences of
Delay.—Where a message, partly in cipher, furnished to a
person of ordinary prudence notice that it was important
and its prompt delivery essential, or where the telegraph
company or its operator receiving it had notice of the im-
portance of the message, special damages are recoverable for
the failure to promptly deliver it; but where the message
does not convey any information of its importance, and the
company or its operator receiving it has no information of
its importance, only the price paid for sending the message
may be recovered for negligent delay in the delivery of it.

11. Telegraphs and Telephones—Negligent Delay in Delivery of
Message—Special Damages—Question for Jury.—Where a tel-
egraph company, sued for negligent delay in delivery of a
message, denied that it had notice that the message was
important and its prompt delivery essential, and the evidence
leaves the matter in doubt, the question is for the jury.

12. Telegraphs and Telephones—Negligent Delay in Delivery of
Message—Special Damages—Knowledge of Consequences of
Delay.—Where a telegraph company or its operator receiving
a message, had notice from the sender, obtained directly,
with reference to the message, or received in the course
of business dealings with him, or information from
other sources, of the importance of the message, the company
is liable for special damages, reasonably followed as a conse-
quence of its negligent delay in delivering the message,
though the message is wholly unintelligible to the operator.

LAWRENCE S. LEOPOLD, RICHARD & RONALD and WM.
W. COOK for appellant.

HENRY W. SANDERS and MORTON K. YONTS for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Re-
versing.

At 4:16 p. m. on September 11, 1905, R. D. Winship
& Co., a firm of brokers in Chicago, sent the follow-
ing telegram to the Louisville Cotton Oil Company:

"Acclimate can sell handsome Bleachable fasten bastile Chicago September answer." This cipher telegram, when translated, means: "On firm offer can sell 10 tank cars Bleachable prime summer yellow oil 27c. Chicago September answer." At 4:40 p. m. on the same day, the Louisville Cotton Oil Company answered this telegram in the following message: "Absurdity Bastile Car Chicago handsome Bleachable Fasten Memphis Exchange rules and arbitration Obedient buyers name"—which, when translated, means: "Telegram received and offer accepted 27 cents Chicago 10 tank cars Bleachable prime summer yellow Memphis Exchange rules and arbitration. On receipt of this please telegraph buyer's name."

This telegram was received at the Chicago office of the cable company at 4:55 p. m., and sent by a messenger boy to the office of Winship & Co. The boy, finding the office closed, left the telegram under the door, where it was found by Winship & Co. the next morning, when they reached their office. The failure on the part of Winship & Co. to receive the telegram on the day it was sent resulted in the cancellation of the order, as the offer contained in the telegram of Winship & Co. was good only if accepted by the cotton oil company on September 11th, and notice of such acceptance delivered to Winship & Co. on that day. Thereupon the cotton oil company brought this suit for damages against the cable company, charging that by its negligence in failing to deliver the telegram it lost the sale of the oil, and that on the following day the market price of such oil declined, and the highest price thereafter obtainable was 24 cents per gallon, at which the oil was sold, making a loss to the cotton oil company of $1,875. In its answer the cable company set up: (1) That the

telegram it failed to deliver was a cipher message, the meaning of which was unknown to it, and the damages claimed by the cotton oil company were not, and could not reasonably have been, contemplated by it at the time it received the telegram for transmission as the probable result of a failure to deliver it; (2) that the telegram sent by the cotton oil company was not an acceptance of the offer made in the telegram of Winship & Co., and therefore no contract would have been completed between the parties if the telegram had been received by Winship & Co. The trial before a jury resulted in a verdict in favor of the cotton oil company for $1,500.

Before coming to the merits of the case we will dispose of a question of practice raised by counsel for the cotton oil company who insists that we cannot consider the evidence in the case because all of it is not embraced in a properly certified bill of exceptions.  On the trial of the case several witnesses testified orally in behalf of each of the parties, and there was read the depositions of R. D. Winship, Clarence Wimpenny, L. C. Doggett, W. E. Griffith, George J. Harding, and Charles A. Stearns.  In the official stenographer's transcript of the evidence, attested by the stenographer and examined and approved by the trial judge, is contained the evidence of all the witnesses who testified in person, and also a statement that the depositions  of  certain witnesses, naming them, were read in evidence to the jury.  The depositions are not included in the stenographer's transcript of the evidence, but are found in the record made by the clerk.  In the bill of exceptions, examined and approved by the trial judge, there appears the following:

"The plaintiff introduced as evidence in its behalf John G. Cafferty, Charles B. Finck, Charles A. Lud-

wig, and read in evidence the depositions of R. D. Winship, Clarence Wimpenny, and L. C. Doggett, as shown by said transcript of evidence. Said depositions will follow immediately after this bill of exceptions in this transcript.  *   *   *   The defendant introduced L. R. James, F. J. Welsh, Ruby Meichels, and J. S. Wright, and read to the jury the depositions of W. E. Griffith, George J. Harding, and Charles A. Stearns; all of which is fully set out in said transcript of evidence."

Reading together the bill of exceptions, incorporated in the record made by the clerk, and the stenographer's official transcript of the evidence, it is shown beyond question that the depositions of the persons named were read in evidence; but the point is made that, as the evidence of the witnesses who testified by deposition does not appear in the bill of exceptions or in the transcript of the evidence, it cannot be considered, and, this being so, we must presume that the omitted evidence supported the averments of the petition and was sufficient to sustain the verdict. The sole purpose and office of a bill of exceptions is to bring before this court a record authenticated by the trial judge of things that transpired in the trial court that do not appear on the record book of the trial court. It is not necessary to put in the bill of exceptions the pleadings, orders of court, or any motion or paper that is mentioned in the orders of court as having been offered or filed as a part of the record, although it may not be copied on the record book, as the fact that it is there mentioned is sufficient evidence of its identification to make it a part of the record for this court when copied by the clerk, accompanied by his certificate.

Under the old system, and before the advent of the official stenographer, it was the practice for attor-

neys to write out a bill of exceptions containing the substance of what the witnesses said and the exceptions and objections thereto, and when any deposition, instruments of writing, or record was introduced to recite in the bill, in substance, that the plaintiff (or defendant, as the case may be) read in evidence a deed from A. to B., or the deposition of H., followed by the words "here insert," which was a direction to the clerk to insert the document or deposition at that place when he came to prepare a transcript for this court. And so, in reference to instructions, the bill, to illustrate, would usually read: The plaintiff offered and the court gave instruction A, reading as follows, "here insert." Occasionally a bill is made up in this way now, although, with few exceptions, the oral evidence is taken down by the official stenographer, who makes out a transcript for use in this court as provided in section 4639 of the Kentucky Statutes. Under the new practice that has come into vogue with the official stenographer, it occasionally happens that the depositions read on the trial will appear in the transcript made out by the stenographer, and also in the record made out by the clerk, and often the depositions will appear in the stenographer's transcript of the evidence and not in the record made out by the clerk, and sometimes in the record and not in the transcript of the evidence. Indeed, it is not a matter of much importance in what part of the record prepared for this court depositions or other like matter appear, so that it is authenticated by the trial judge as having been read on the trial, as the Civil Code of Practice provides, in section 335, that "no particular form of exception or bill of exceptions is required."

The bill of exceptions in this case, in speaking of the depositions for the cotton oil company, after naming the witnesses who gave evidence by deposition, recites that "the depositions will follow immediately after this bill of exceptions in the clerk's transcript," and they do. In reference to the depositions read in behalf of the cable company, it recites that the depositions of the witnesses in its behalf, naming them, are set out in the transcript of the evidence; but they are not, although they are copied by the clerk in the record. It thus appears from the stenographer's transcript, signed by the judge, as well as from the bill of exceptions, signed by the judge, that the depositions were read, and the mere fact that they do not happen to be copied in the record or transcript at the place they should be will not be allowed to overturn the conclusive fact that they were read on the trial, or justify us in refusing to consider them as a part of the record in this court.

While upon this point we may say that, although it is right that depositions and other papers that are filed with the clerk should be copied by him in the record he makes for this court, as a part of the legitimate emoluments of his office, and that they should not be embodied in the transcript made by the official stenographer, as the statute (section 4639) contemplates that the stenographer shall only take notes of and make a transcript of the oral testimony offered or introduced, yet, if the depositions appear in the stenographer's transcript, and it is signed by the judge, or if the bill of exceptions shows that the depositions of certain witnesses, naming them, were read as evidence, and they are copied by the clerk in the record made out by him, or if the stenographer's transcript shows that the depositions of certain witnesses, nam-

ing them, were read in evidence, and they are copied by the clerk in the record, they will be considered by this court as a part of the record. As said in Sinclair's Admr. v. I. C. R. R. Co., 100 S. W. 236, 30 Ky. Law Rep. 1040: "In fact, when the evidence is taken by the official stenographer, and his transcript contains all the evidence introduced and offered, and all exceptions, objections and avowals concerning same, and is certified to as correct by the stenographer and approved by the judge before whom the trial was had, and made a part of the record by an order of court, no bill of exceptions is necessary unless it be to make a part of the record the instructions and other matter not contained in the transcript of the official stenographer. In fact, the official stenographer's transcript may also contain the instructions given, offered, and refused, and the objections and exceptions relating thereto, and when it shows that it contains all the instructions and all the evidence, and the exceptions, objections, and avowals, and is properly certified and approved, it becomes a complete bill of exceptions when filed by an order of court, although another bill of exceptions may be prepared containing matter that for any cause has not been presented in a bill of exceptions."

To the same effect is McGeever v. Kennedy, 42 S. W. 114, 19 Ky. Law Rep. 845. Neither the cases of L. & N. R. R. Co. v. Finley, 86 Ky. 297, 5 S W. 753, 9 Ky. Law Rep. 660, McAllister v. Connecticut Mutual Life Ins. Co., 78 Ky. 531, and C. & O. S. W. R. Co. v. Smith, 101 Ky. 107, 39 S. W. 832, 18 Ky. Law Rep. 1079, nor the line of cases in reference to instructions which are referred to in Gambrell v. Gambrell, 130 Ky. 714, 113 S. W. 885, are in conflict with the views we have expressed. An examination

of them will show that, when the court refused to consider the depositions and instructions as not properly a part of the record, it was because they were not identified by the attestation of the trial judge.

Getting back to the merits of the case, the right of the cotton oil company to recover damages rests alto-gether on the proposition that if the message sent by it had been received in due time a valid contract would have been made between the parties; or, in other words, a contract that either of them might have brought an action in damages for a breach of. Unless such an action could be successfully maintained, the cotton oil company cannot recover more than nominal damages for the failure of the cable company to deliver the message. If no valid enforceable contract would have been made by the two telegrams, it necessarily follows that the cotton oil company cannot recover damages from the cable company that would only have resulted if the contract had been made.

The question then comes up: Did the telegrams make a contract between the parties sending them? The cable company insists they did not, because the acceptance contained a qualifying clause; in other words, was not an unconditional acceptance of the offer. If this position is well taken, no more than nominal damages can be recovered, as the authorities in this state and elsewhere are uniform that to close a contract the proposition to sell or buy, as the case may be, must be accepted in the very terms in which the proposition is made. If any qualifications or conditions are added to the acceptance, the offer is not accepted, and hence no contract is made. In Eliason v. Henshaw, 4 Wheat, 225, 4 L. Ed. 556, the law upon this point is thus stated: "It is an undeniable prin-

ciple of the law of contracts that an offer by a bargain of one person to another imposes no obligation upon the former until it is accepted by the latter according to the terms in which the offer was made. Any qualification of or departure from, those terms, invalidates the offer, unless the same be agreed to by the person who made it. Until the terms of the agreement have received the assent of both of the parties, the negotiation is open and imposes no obligation upon either.''

This was approved in Provident Savings Society v. Elliott, 93 S. W. 659, 29 Ky. Law Rep. 552, and again in New York Life Ins. Co. v. Levy, 122 Ky. 457, 92 S. W. 325, 29 Ky. Law Rep. 6, 21, 5 L. R. A. (N. S.) 739, in which last mentioned case the question is elaborately discussed and many authorities are cited sustaining the rule announced.

It will be observed that the offer was to buy ten tanks of bleachable prime summer yellow oil at 27 cents, while the acceptance, although it agreed to the offer of 27 cents, for ten tank cars bleachable prime summer yellow oil, followed this by the words ''Memphis Exchange rules 'and arbitration,'' and from a mere reading of the telegrams it would seem that these words did annex a condition, and that the message of the cotton oil company was only a qualified acceptance of the offer, and one that would require an answer accepting the added condition before the contract could be said to be closed; but there is evidence that these apparently qualifying words did not in fact impose any condition or add any terms that were not contemplated and agreed to by both of the parties at the time the telegrams were sent and received. The president of the cotton oil company, as well as Winship, testifies that the message of the cot-

ton oil company was an acceptance of the offer, and, although the evidence is not satisfactory, there is more than one suggestion in it that, in contracts like the one in question, it is understood by the parties that the Memphis Exchange rules and arbitration apply to all contracts of this kind.

If it is true that it was mutually understood by the parties and within their contemplation at the time the telegrams were sent that the Memphis Exchange rules and arbitration should apply to the contract, or there was in existence at the time a well known and established custom entering into contracts like this that the Memphis Exchange rules and arbitration should apply, or, to put it in another way, if when Winship & Co. sent the telegram they understood and agreed that the Memphis Exchange rules and arbitration should apply to it, the fact that these words were used in the message of acceptance would not modify or qualify the offer, but on the contrary would make a complete contract between the parties. What is mutually understood and agreed to by the parties will enter into and become a part of a contract, as will a well established custom of the trade enter into and become a part of it when the custom is known and understood by the parties and the contract is made with reference to it.

And so, on another trial, it will be competent for the cotton oil company to introduce evidence to show that its message was an acceptance of the offer, and the custom of the trade in reference to such contracts, and likewise competent for the cable company to introduce evidence to show that it was not an acceptance and that there was no such custom. If there is conflict in the evidence on these points, the court should, in addition to other instructions, tell the jury,

in substance, that, if the telegram sent by the cotton oil company to Winship & Co. changed or modified the terms upon which Winship & Co. offered to buy the oil, the cable company was not liable for any damages exceeding the cost of the telegram, although it may negligently have failed to deliver it within a reasonable time.

As to whether or not a telegraph company is liable in more than nominal damages for its failure to transmit and deliver in reasonable time a cipher message, there is some conflict in the authorities, and the question has never been directly passed on by this court, although it was mentioned in Western Union Telegraph Co. v. Eubanks, 100 Ky. 591, 38 S. W. 1068, 18 Ky. Law Rep. 995, 36 L. R. A. 711, 66 Am. St. Rep. 361.

The weight of the adjudged cases undoubtedly is that where the message is in cipher and unintelligible, except to the sender and addressee, and the company has no information or notice except that gathered from the telegram itself as to the importance of its delivery, the injured party cannot recover more than nominal damages.  Primrose v. Western Union Telegraph Co., 154 U. S. 1, 14 Sup. Ct. 1098, 38 L. Ed. 883; Thompson on Negligence, section 2472; Jones on Telegraph & Telephone Companies, sections 531-538; Am. & Eng. Ency. of Law, vol. 27, p. 1062; Candee v. Western Union Telegraph Co., 34 Wis. 471, 17 Am. Rep. 452.

But, on the other hand, there are a few courts that hold that the company is liable for all special damages the complaining party suffered by its negligence, although the message was wholly in cipher or couched in language that did not convey its real meaning or importance.  Daughtery v. American Union Tele-

graph Co., 75 Ala. 168, 51 Am. Rep. 435; Western Union Telegraph Co. v. Reynolds, 77 Va. 173, 46 Am. Rep. 715.

Although a telegraph company is a public servant and owes to the public duties that it cannot contract against or avoid responsibility for, nevertheless it should not be held liable for any loss or damage that it could not reasonably know or contemplate, when it received the message, would follow from its failure to transmit or deliver it with reasonable diligence; or in other words, for loss that it had no notice or information of when it entered into the contract of carriage. The whole doctrine of liability for breach of contract is based upon the proposition that, when parties enter into a valid contract, it is within the contemplation of each of them that a failure to perform it will result in some loss or damage to the party not in default, and that this loss or damage the delinquent party must make good if it was a reasonable and natural consequence of his breach. But special or extraordinary damages cannot be recovered unless it can be shown that they were within the contemplation of the parties when the contract was made, or that the defaulting party had notice that such damages would result from his breach, and, in the absence of notice, it cannot be said that it was contemplated by the parties that this class of damages would result from a failure to perform the contract according to its terms.

This rule in reference to special damages has been applied by us in actions against common carriers of goods, and we have held that whenever a person damaged by unreasonable delay in the transportation of freight seeks to recover more than nominal damages, or to recover special or extraordinary damages,

such as loss of profit or loss of custom, or the like, it must be shown that the carrier was either notified of the importance of prompt delivery, or the nature of the goods furnished in themselves such notice. L. & N. R. Co. v. Mink, 126 Ky. 337, 103 S. W. 294, 31 Ky. Law Rep. 833; Illinois Central R. Co. v. Nelson, 97 S. W. 757, 30 Ky. Law Rep. 114.

This rule we think it fair and just to apply to telegraph companies. If the message on its face, although partly in cipher or unintelligible, would furnish to a person of ordinary prudence notice that it was important and its prompt delivery essential, or if the company or its operator receiving it has notice of its importance, then special damages may be recovered for the failure to promptly transmit or deliver it.

On the other hand, if the message is of such a character that it does not convey any information of its importance or the necessity for its prompt transmission or delivery, and if the company or its operator receiving it has no information or notice of its importance, only nominal damages, or, in other words, the price paid for sending the message, can be recovered if the company is negligent in its transmission or delivery. Whether special damages can be recovered is not dependent upon the proposition that the message on its face is intelligible. If the company or the operator receiving it has notice from the sender obtained directly with reference to the particular message, or received in the course of business dealings with him, or information from other sources, of the importance of the message, it will be liable for the special damages that reasonably and naturally followed as a consequence of its negligence, although the message may be wholly unintelligible to the operator, and no person excepting the sender and addressee

have knowledge of its meaning. The essential thing is notice; that is, such notice as would give a person of ordinary prudence information of the importance of the message. It is a matter of secondary moment how this notice is obtained. If the company denies that it had notice, and the evidence leaves the matter in doubt, it is a question for the jury, and the complaining party may introduce in evidence such facts and circumstances as throw light upon the question of whether or not the company, at the time it received the message, did have notice of its importance. Jones on Telegraph & Telephone Companies, Sec. 538; Postal Tel. Co. v. Lathrop, 131 Ill. 575, 23 N. E. 583, 7 L. R. A. 474, 19 Am. St. Rep. 55.

Under this view of the law, the court on another trial may permit the cotton oil company to introduce evidence showing its course of dealings with the cable company, the number and kinds of messages sent by and received from it, and any other facts or circumstances tending to show that the company or its operator receiving the message had notice at the time of its importance and the jury should be instructed in substance, that if they believe from the evidence that the cable company knew, or in the exercise of reasonable prudence should have known, from the message or other facts within its knowledge, that the message related to a commercial transaction of importance, then it had such notice as would make it liable in special damages if it negligently failed to deliver in a reasonable time the message.

Wherefore the judgment is reversed, with directions for a new trial in conformity with this opinion.

NUNN, C. J. I dissent from that part of the opinion which establishes the doctrine that it is necessary for the sender of a message to expose his trade or

other secrets to the telegraph company, a public service corporation, before it can be made to respond in damages for its negligence in the transmission and delivery of the message.

RESPONSE TO PETITION FOR RE-HEARING BY JUDGE BARKER.

In answer to an argument presented for the first time in the petition for rehearing, we add to the opinion this:

If it be alleged and proven that a message, if sent or delivered with due diligence, would result in a sale of property or in securing property or employment or other thing of value, and, on account of the failure or delay in sending or delivery of the telegram, the plaintiff has sustained loss or damage which he would not otherwise have suffered, he may recover from the telegraph company such damages as were the natural and proximate result of its negligence in failing to send or deliver the message with reasonable diligence. Or, to put it in another way, if an offer, direction, or proposition in a telegram is to do or not do a certain thing, and it be alleged and proven that on account of the negligence of the company the telegram was not sent or delivered with reasonable diligence, the company will be liable for the loss or damage sustained that resulted from its negligence. In such a case evidence that the sendee would have acted on the offer, direction, or proposition contained in the telegram if it had been received, would be competent to show in connection with other testimony the amount of loss or damage.

But that is not this case. Here the action was based entirely upon the proposition that the telegram sent by the Cotton Oil Company was an acceptance of an

Postal Telg. Cable Co. v. Louisville Cotton Oil Co.

offer made it, and hence closed the contract.   It was sought to recover as damages the amount that would have been realized if the sale contemplated in the telegram had been consummated.   As the cause of action was rested on this proposition, it follows that, if the telegram sent by the Cotton Oil Company did not close the contract, it cannot recover as damages the sum it would have realized as profit if the contract had been closed.

Petition for rehearing overruled.