HENRY C. McNEIL and WILBUR C. McNEIL v. POSTAL-TELEGRAPH CABLE COMPANY, Appellant.

**Telegrams:** DELAY IN DELIVERY: DAMAGES. Profits which it is shown would in all reasonable probability have accrued to the addressee of a telegram had the same been delivered promptly are recoverable as damages. Thus where a cement company sent plaintiff the following message: "Price paving job one seventy nine, which includes forty cents sac," there was an express authorization to sell cement at the price named, and upon proof that plaintiff would have made certain sales had the message been promptly delivered he was entitled to recover the profits lost by reason of its delay.

*Appeal from Woodbury District Court.*—HON. JOHN F. OLIVER, Judge.

THURSDAY, FEBRUARY 15, 1912.

ACTION to recover damages growing out of defendant's failure to promptly deliver a telegram. Trial to a jury. Verdict for plaintiffs in the sum of $900, and defendant appeals.—*Affirmed.*

*Milchrist & Scott,* for appellant.

*Henderson & Fribourg,* for appellees.

Deemer, J.—Plaintiffs were dealers in lime and cement at Sioux City, Iowa, in January of the year 1911, and on the 20th day of that month at 3 o'clock p. m., the Western States Portland Cement Company of Kansas City, Mo., delivered a telegram addressed to plaintiffs in the following words: "Kansas City, Mo., Jan. 20, '11. H. C. McNeil & Son, Sioux City, Iowa. Price paving job one seventy nine which includes forty cents sac. Western States Portland Cement Co." The rate charged was duly paid; but the message was not delivered to plaintiffs until the morning of January 21st. Plaintiffs alleged in their petition: "That had the said telegram been transmitted and delivered to plaintiffs promptly and in due course of business plaintiffs could and would have sold 6,000 barrels of cement at a profit of 15 cents per barrel; the plaintiffs having at said time an oral contract for such sale with Flinn & Hanlon, of Sioux City, Iowa, at such a price, to wit, $1.44 per barrel. That plaintiffs would have bought said 6,000 barrels of cement from the sender of said telegram and would have sold the same and made the aforesaid profit, amounting in the aggregate to $900." Testimony was adduced in support of the various allegations of the petition, and the jury returned a verdict for plaintiffs upon which judgment was rendered.

While something like eight errors are assigned as grounds for reversal, the entire argument centers around the one proposition that plaintiffs did not show themselves entitled to the damages claimed or to anything more than nominal damages; in other words, that the damages allowed are purely speculative and fictitious, and not such as were in the contemplation of the parties. The question thus presented is a nice one, and one upon which the au-

thorities are not in entire harmony. Apparently we have two lines of cases in this court. On the one hand are *Evans & McCloud v. W. U. Co.,* 102 Iowa, 219, and *Bennett v. W. U. Tel. Co.,* 129 Iowa, 607, and perhaps others; and on the other, *Lucas v. Tel. Co.,* 131 Iowa, 669; *Hise v. W. U. Tel. Co.,* 137 Iowa, 329; *Larsen v. Tel. Co.,* 150 Iowa, 748; *McPeek v. Tel. Co.,* 107 Iowa, 356; *Hendershot v. W. U. Co.,* 106 Iowa, 529; *Herron v. W. U. Co.,* 90 Iowa, 129; *Garrett v. W. U. Tel. Co.,* 83 Iowa, 257; *Pennington v. W. U. Co.,* 67 Iowa, 631; *Manville v. W. U. Co.,* 37 Iowa, 214, and others of the same character. Defendant contends that the case is ruled by the first class cited, and plaintiff with just as much confidence insists that it is ruled by those last cited.

A careful examination of the cases relied upon by appellant disclosed that they are not in point. The *Evans* case, *supra,* does not support its contention. Really it is an authority for the plaintiff in so far as it has any bearing upon the issue here presented. *Bennett v. Tel. Co., supra,* is more nearly in point, although that case is not controlling. There the message was a mere inquiry which involved no obligation on the part of either the sender or receiver; and the court expressly held that if the message had constituted an offer or a direction to buy, ship, or sell, the result would have been different. *McPeek v. Tel. Co.,* 107 Iowa, 356, was distinguished upon this identical ground. *Mickelwait v. Tel. Co.,* 113 Iowa, 177, does not support appellant's contention. Plaintiff in that case was allowed all the profits which he showed he was entitled to. The question seems to us to be ruled in principal at least by *Larsen v. Tel. Co.,* 150 Iowa, 748; *Hise v. Tel. Co.,* 137 Iowa, 329; and *McPeek v. Tel. Co.,* 107 Iowa, 359.

In *McPeek's* case it is said: "This action is based on the negligence of the defendant in the performance of a duty in its public capacity as a common carrier of messages. In all such actions, sounding in tort, the injured

party is not limited to damages which might reasonably have been within the contemplation of the parties, but recovery may be had 'for all the injurious results which flow therefrom, by ordinary natural sequence, without the interposition of any other negligent act or overpowering force' "—citing cases. In *Larsen's* case, we said:

The telegram was in the form of a mere inquiry of whether plaintiff would accept the appointment, and it is contended that an acceptance would not have given him the position, and for this reason plaintiff can recover nothing because of nondelivery. See *Bennett v. Telegraph Co.,* 129 Iowa, 607; *Wilson v. Telegraph Co.,* 124 Ga., 131, (52 S. E. 153). The acting commissioner of Indian affairs testified that he had selected plaintiff for the position of carpenter at the Winnebago Indian agency, and that 'though the telegram did not constitute an appointment, it indicated the intention of the office to appoint him, had he answered in the affirmative.' The telegram, then, according to the usage of the department, was equivalent to a tender of the position, and, as the intention to appoint, had the offer been accepted, was proven, it was to be inferred that such purpose would have continued and been made effective. A settled design having been proved to exist, it is a matter of legitimate inference that it would have been persisted in and acted upon but for some supervening obstacle. 1 Wigmore Evidence, sections 102, 112. The evidence, then, was such as to fairly put in issue whether, under the circumstances, the sending of the telegram was equivalent to a tender of the appointment to the position of carpenter, and there was no error in submitting the issue to the jury. The plaintiff testified that, had the telegram been received, he would have accepted the position, and circumstances proven tended to corroborate such testimony; but it is contended that whether he would have done so, and whether the acting commissioner of Indian affairs would have given him the appointment, were mere matters of speculation. Of course, no one can say to a certainty what might have been done under problematical conditions in the past. All that is possible in such a case is to determine from the proof what in all reasonable prob-

ability would have occurred under conditions supposed. Such is the inquiry involved in nearly all personal injury cases, and was proper for determination in the case at bar. In *Barker v. Telegraph Co.*, 134 Wis. 147, (114 N. W. 439, 14 L. R. A. (N. S.) 533, 126 Am. St. Rep. 1017), a person in Chicago had concluded to abandon a trip to Arizona to take treatment from complainant, and caused a telegram to be sent to him at Madison, Wis., inquiring whether he would be in Madison on Sunday or would go to Chicago. The company failed to deliver the message, and, as the person in Chicago had transportation, he left for Arizona before complainant learned of his desire for treatment. The court held that he was entitled to recover, and that it was sufficient to show by 'reasonable inference from established facts, according to the known forces of nature and human nature, that plaintiff would have made pecuniary gains if he had received the telegram, and was prevented from so doing solely by its nondelivery without an intervening independent cause.' In *Derry v. Flitner*, 118 Mass. 131, the defendant wrongfully occupied a place of shelter to which plaintiff's vessels were entitled. Two of the latter were exposed to and sunk by the storm. The court sustained the inference that, but for defendant's wrong, plaintiff's vessels would have been in a place of safety. See *McPeek v. Telegraph Co.*, 107 Iowa, 356. As said, the probability of a different result but for the negligence of the wrongdoer is involved in nearly every negligence case, and there is no reason why the same rule should not be applied to the alleged negligent conduct of a telegraph company.

Again in *Hise's* case, which is even more closely in point, we announced this rule:

Plaintiff was not selling his own land, and the rule which holds that damage may not be recovered from the purchaser for refusing to carry out his contract of purchase, if another person stands ready to take the property at the same or a greater price, has here no application. The plaintiff's relation to the proposed sale was that of agent merely, and his interest therein was measured solely by the commission or margin reserved under his agreement with the holder of the title. Had the message been delivered to

him, and he had accepted the offer then communicated, his profit would have been earned, and the mere fact that, by further effort thereafter made, and after the commencement of this action to recover damage because of the loss of said sale, he succeeded in finding another buyer to take the property, would in no manner, affect the right of action which had already accrued in his favor. Whatever profit he may have received by reason of finding a second purchaser was his legitimate compensation for the effort made in bringing such purchaser and the seller together, and was not in any sense of the term for his services with respect to the sale which was lost through the defendant's alleged negligence. The foregoing propositions are too clear and elementary to call for citation of authorities or for extended argument.

Now the jury was authorized to find that plaintiffs, who were agents at Sioux City, of the Western States Portland Cement Company, had an oral agreement with Flinn & Hanlon of Sioux City, who were large contractors for cement work, to furnish them with 6,000 barrels of cement at $1.44 per barrel, provided they would close the same not later than the evening of the 20th day of January, 1911. Accordingly, plaintiffs called up the agent of the Cement Company at Kansas City by telephone, and this agent agreed that he would do what he could to assist them in getting the cement contract and would wire them that afternoon, and that, in addition to the price quoted, they (plaintiffs) would be entitled to a discount of ten cents per barrel upon the cement. The message which we have quoted was sent pursuant to this arrangement, but was not delivered until too late for plaintiffs to close the contract with Flinn & Hanlon, and they bought their cement elsewhere. The testimony shows that Flinn & Hanlon were ready to take the cement as agreed, and that plaintiffs would have sold had the message been delivered before 8 o'clock in the evening of January 20th. The contract was in fact let to another at 8:30 the same evening. Plaintiffs also testified in effect that they would have ordered the goods

from the Cement Company at Kansas City had the message been delivered to them in time to have closed the deal with Flinn & Hanlon. The quotation already made from the *Hise* case, *supra,* seems to be peculiarly applicable to this state of facts. The message was a direct offer to plaintiffs or an express authorization to them to sell on the basis of a named price. It gave the telegraph company notice that it had reference to a paving job and specifically named a price per sack. It was signed by a cement company and gave the telegraph company such notice that it was bound to anticipate loss might follow if it were not speedily delivered. This, under the rule announced in the *Evans* and *McPeek* cases, *supra,* was all the notice to the telegraph company of the character of the dealings between the parties that the law requires. That some damages would likely follow from failure to promptly deliver the message was apparent, and we are committed to the doctrine that profits which one might have made are not so remote and speculative that they can not be considered as elements of damage. Indeed, the contrary is the rule for this state, as announced in the *Hise* and other like cases.

Appellants' counsel seek to distinguish these cases on the ground that they each and all involved the element of personal service and are therefore inapposite. But no such distinction can be made. Personal services previously rendered were not considered as a controlling or even an important feature in any of these cases; nor do we see how upon principal that would add anything to the case. Loss of profits would be quite as remote and speculative in one case as in the other. In the *Hise* case plaintiff was not selling his own land, and his interest in the proposed sale was measured by his commission or the margin reserved under his agreement with the owner of the land. He would not have been bound to sell had the message been delivered; nor would the proposed purchaser have been bound to buy, for the offer was not from him directly. But the testi-

mony showed that the purchaser was ready, willing, and able to buy, and that Hise might have sold, and thus made his profit, had the message been delivered. Here Flinn & Hanlon had offered and were ready, able, and willing to buy, and the plaintiffs say they would have sold had the message been delivered. Their damages should be measured, then, by the profits they would have made as agents for the sale of the cement had the message been promptly delivered. This was their loss due to failure of the telegraph company to promptly deliver the message. It is true that plaintiffs did not purchase the cement at any price, and that they were at no time the owners thereof. But their action is not bottomed upon this theory. Their claim is that as agents they lost a profit which they might otherwise have made had the message been delivered, and in this respect it is exactly like the *Hise* case. Even were some other actual damages essential as a basis for an allowance of loss of profits, we find it here present in loss of time and money expended by plaintiffs for telephonic service in reaching the cement company at Kansas City.

The following cases from other jurisdictions lend support to our conclusions: *Thorp v. W. U. Tel. Co.,* 118 Mo. App. 398, (94 S. W. 554); *Harper v. W. U. Tel. Co.,* 92 Mo. App. 304; (s. c., 111 Mo. App. 269, 86 S. W. 904); *W. U. Tel. Co. v. McLaurin,* 70 Miss. 26, (13 So. 36); *W. U. Tel. Co. v. Fatman,* 73 Ga. 285, (54 Am. Rep. 877); *Postal Tel. Co. v. Louisville Co.,* 136 Ky. 843, (122 S. W. 852, 125 S. W. 266); *Swan v. W. U. Tel. Co.,* 129 Fed. 318, (63 C. C. A. 550, 67 L. R. A. 153); *W. U. Tel. Co. v. Partlow,* 30 Tex. Civ. App., 599, (71 S. W. 584); *Barker v. W. U. Tel. Co.,* 134 Wis .147, (114 N. W. 439, 14 L. R. A. (N. S.) 533, 126 Am. St. Rep. 1017); *W. U. Tel. Co. v. Collins,* 45 Kan. 88, (25 Pac. 187, 10 L. R. A. 515); *Wallingford v. W. U. Tel. Co.,* 60 S. C. 201, (38 S. E. 443, 629); *Texas Co. v. MacKenzie,* 36 Tex. Civ. App. 178, (81 S. W. 581). That there are authorities holding to a con-

trary doctrine has already been conceded; but the *Hise* case compels our adherence to the principle allowing loss of profits as an element of damages in such cases.

This being the only question in the case, it follows that the judgment must be, and it is, *affirmed*.